SAMUEL W. HAYES,
MATTHEW J. KANE,        } JUSTICES.
JOHN B. TURNER,
R. L. WILLIAMS,

---

PEACEABLE CREEK COAL CO. *et al.* v. JACKSON *el al.*

No. 678.    Opinion Filed March 8, 1910.

(108 Pac. 409.)

1.    MINES AND MINERALS — "Improvement" — Mechanics' Lien.
A coal mine is an improvement within the meaning of section
4817, Wilson's Rev. & Ann. St. 1903 (section 6751, Comp. Laws
Okla., 1909).

2.    MINES AND MINERALS—Mechanics' Liens—Necessity of Filing.
As between a lienholder and the owner of the realty which has
been improved and intervening creditors whose claims arose prior
to the furnishing of the material or the performing of the labor
for which the lien is sought, the realty and improvement there-
on being in the hands of a receiver, and all of the parties in in-
terest being brought into the district court in such action within
four months after the date upon which the material was last
furnished or labor last performed under the contract, the same

will be deemed a sufficient compliance with the provisions of section 6152 of the Compiled Laws of Oklahoma of 1909, without otherwise filing, within the required period of four months in the office of the district clerk, an **ex parte** statement as prescribed by said section.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County; P. B. Cole, Judge.*

Action by Andrew Jackson and others against the Peaceable Creek Coal Company and others. From the judgment, defendants bring error. Modified and affirmed.

*Boyd & Moore, Brewer & Andrews, F. H. Kellogg,* and *Clayton & Clayton,* for plaintiffs in error.

*Eubanks & Elder,* for defendants in error.

Copies of briefs did not reach the reporter.

WILLIAMS, J. 1. The first question for determination is as to the right of certain plaintiffs and interveners to have recognized and enforced, by virtue of sections 4817, 4818 (sections 6151, 6152, Comp. Laws Okla. 1909) Wilson's Rev. & Ann. St. 1903, a claim for a lien on a coal mine, machinery, equipment, and fixtures thereof. Section 3018 of the Code of Alabama of 1886 provides:

"Every mechanic or other person who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery, for any building or improvement on land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor, upon complying with the provisions of this chapter shall have a lien therefor on such building or improvement and on the land on which the same is situated," etc.

In the case of *Central Trust Co. of New York v. Sheffield & Birmingham Coal, Iron & R. Co., Watt Mining Car Wheel Co., Intervener* (C. C.) 42 Fed. 106, 9 L. R. A. 67, the Alabama statute was construed by Circuit Judge Pardee, wherein he said:

"The first question presented is whether or not the coal mine, as set forth and described in the intervention and exhibits, is such an improvement upon land as comes within the meaning of the statute just quoted, it being contended on one side that the word 'improvement' in the statute must be limited in its meaning to build-

ings and things *ejusdem generis;* in other words, that an improvement upon land which is not in the nature of a building is not an improvement within the meaning of the statute. On the other hand, it is claimed that, in the proper construction of the statute, the word 'improvement' is not at all limited by the word 'building' preceding it, but that it is to be taken as extending the class of construction which may be the subject of a lien, rather than limiting such class. * * * If this word 'improvement' is given its ordinary meaning, the new law is extended to cover the construction of coal and iron mines, and thereby great help is given to the owners of mineral lands to develop their property, and such development increases the general prosperity of the state. There was no reason why capital and labor put into the coal and iron industries should not be encouraged and protected, as well as in other works and improvements. A going coal mine is not merely a hole in the ground. It is made up of shafts, drifts, slopes, engines, machinery, platforms, cars, tracks, scales, etc.; and, taken as a thing, if not a building, it is unquestionably an improvement, and an improvement on land. Taking into consideration the importance and condition of the mines and mining interests of the state in 1876, it is a fair presumption that the legislative intention in the act of 1876 was mainly to extend the lien of mechanics and materialmen for work and material so as to aid in the development of the state's mineral resources. However this may be, it clearly appears to me that the coal mine described in the intervention and exhibits is an improvement, within the meaning of the terms used in section 3018 of the Alabama Code, and that for material, fixtures, engine, boiler, or machinery furnished therefor, a lien results to materialmen on compliance with the requirements of the statute."

In the case of *Bates v. Harte,* 124 Ala. 427, 26 South. 898, 82 Am. St. Rep. 186, section 2723 of the Code of 1896, which is identical with section 3018 of the Code of 1886, was construed, wherein the court said:

"The statute recognizes that improvements meriting the protection of a lien may be made upon land otherwise than by building, but as they may occur in unforseen variety, the scope of the term 'improvement' is left for determination in particular cases as they may arise. It is well known that a supply of water is often one of the most convenient and useful of all appurtenances to land. Its development by means of drilling and casing a well may greatly

enhance the permanent value of the land. We, therefore, hold that a well, designed and made for a permanent supply of water, is an improvement upon land within the meaning of the statute referred to."

The case of *Eufaula Water Company v. Addyston Pipe & Steel Company*, 89 Ala. 552, 8 South. 25, was an action brought to recover on an account for "piping" furnished by plaintiff to defendant under contract, for use in the construction of its works in Eufaula; and to have a lien, as for materials supplied, declared and enforced against a certain one-acre lot belonging to the defendant, situated just beyond the corporate limits of said city. This lot was the *situs* of defendant's pumping station, and on it were erected and placed buildings and machinery essential to forcing water into defendant's standpipe or reservoir—a half-mile distant—whence it was supplied, through a system of pipes, to the city and its inhabitants. The piping supplied by the plaintiff was used in making the conduit between the pumping station and the reservoir, a distance of about 3,000 feet, and extended from a point 25 feet within the lot in question, and outside of the buildings thereon, to the reservoir, being for its whole length, except said 25 feet, on land which did not belong to defendant, but in which the water company had an easement for this purpose only. Judgment for the amount in suit went for the plaintiff, and to this no objection was made, or exception reserved. The case was presented on appeal solely on exceptions to the court's general charge in favor of the plaintiff, and its refusal to give the general charge for the defendant, as to whether a lien existed on the one acre in question and the buildings thereon. The court said:

"We do not doubt that the laying of pipe *on* the lot of land, for the purpose shown by this record, is an 'improvement' within the meaning of Code (section 3018), nor that the value of pipe furnished for such a purpose might ordinarily be charged on the land, under the law which provides a lien for mechanics and materialmen."

Section 6151, *supra*, is more comprehensive than the Alabama statute, in that it provides that:

"Any person who shall, under oral or written contract with the owner of any tract or piece of land perform labor, or furnish material for the erection, alteration or repair of any building, improvement, or structure thereon; or who shall furnish material or perform labor in putting up any fixtures, machinery in or attachment to, any such building, structure or improvements; or who shall plant any trees, vines, plants or hedge in or upon such land; or who shall build, alter, repair or furnish labor or material for building altering or repairing any fence or foot walk in or upon said land, or any sidewalk in any street abutting such land, shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances, but if a homestead the lien shall be good on not to exceed five acres in a square form on which the building material, fixtures or machinery are located, in the manner herein provided, for the amount due him for such labor, materials, fixtures or machinery. If the title to the land is not in the person with whom any such contract was made, but is leased and unimproved, the lien shall be allowed on the buildings and improvements on such land separately from the real estate."

Every conceivable improvement in the constructing of a building, structure or planting of trees, vines, plants, or hedges, building or alteration in fences or footwalk or sidewalk, is provided for, and the general word "improvement" cannot be reasonably construed to have been used with the limitation in its meaning to buildings and things *ejusdem generis*. Said section being considered in connection with its general scope of application, it is reasonably clear that the word, "improvement" was used in its ordinary and general sense or acceptation, and includes any and every character of improvement upon realty. We accordingly conclude that the term "improvement," as used in section 6151, Comp. Laws Okla. 1909, includes a coal mine or a coal mining plant, comprising mine openings, with equipment and slopes from which entries and rooms have been turned, etc., coal being mined therefrom.

2. May such a lien be recognized and enforced without the provisions of section 6152, *supra*, being complied with as to the filing of the required statement with the district clerk within four months? It was conceded on the oral argument that these claims were presented to the court and heard by the referee on an agreed

statement of facts, and report thereon made, and judgment render-
ed by the court within four months after the date upon which the
material was last furnished or labor last performed under the con-
tract; all parties having been brought in, and the property sought
to be charged by the lien during this period being in the hands
of a receiver.

In the case of *Murray v. Rapley,* 30 Ark. 568, the court said:

"Had the plaintiff a mechanic's lien on the house and two
acres of land on which it was situated? That the plaintiff was a
mechanic, that he furnished materials, and did work upon the
house, the property of the defendant, at her instance, and of the
value of $300, are questions out of dispute, nor is it questioned that
the writing sued upon, in which a lien on the house and land is
expressly contracted, was not acknowledged, filed, and recorded in
the proper office, within the time required by the statute. But it
is strenuously contended by the defendant's counsel that the in-
strument thus acknowledged and filed was not a compliance with
the provisions of the statute; that this as a right given by statute,
and to which the party is alone entitled, who complies fully with
the statute requisites. Section 4060, Gantt's Digest, provides that:
'It shall be the duty of every person, who wishes to avail himself
of this act, to file with the clerk of the circuit court in which the
building, erection, or other improvement, to be charged with the
liens is situated, and within ninety days after all the things afore-
said shall have been furnished, or the work or labor done or per-
formed, a just and true account of the amount due or owing to
him, after allowing all credits, and containing a correct description
of the property to be charged with said lien, verified by affidavit.'
That in this instance there has been no technical compliance with
the statute is evident. This the plaintiff does not deny, but in-
sists that there has been a substantial compliance with the statute.
It is true that this is a statute remedy, but it is one enacted for the
protection of the mechanics, laborers, and furnishers of supplies to
those desiring to erect buildings or to make improvements upon
real estate, and that the statute which requires that the mechanic,
or other claimant of a lien, should verify and file his account to
entitle him to a lien was intended, not alone to identify and fix his
right of lien upon the particular property upon which his labor
and materials had been bestowed, but also to give notice to others
who may contract for liens upon the same property of the nature

and extent of his claim. And in cases in which there is a contest between lien claimants the mechanic should be held to such strict performance of the requirements of the statute as to entitle him to its benefits. But in an issue between the mechanic and the owner of the property upon which the labor has been bestowed we apprehend that less strictness in complying with the statute would be required, because, as he is a party to the contract the owner of the property upon which the labor is bestowed, and may be presumed to know the character of the work performed, as well as the materials furnished, constructive record notice is not so necessary, indeed, scarcely at all necessary, for his protection."

In the case of *Anderson v. Seamans,* 49 Ark. 475, 5 S. W. 799, the court said:

"Before the expiration of the 90 days the mechanic brought suit upon this instrument to enforce his lien. No account had ever been filed in the clerk's office, nor abstract entered. It was objected that no compliance with the statutory requirements had been shown. But the court rules that there had been a substantial compliance; that the neglect to comply fully and technically with direc tions which were intended for the protection of third persons, who might acquire rights in or liens upon the same property, could by no possibility tend to the defendant's prejudice, but might defeat the ends of justice."

See, also *Buckley v. Taylor,* 51 Ark. 302, 11 S. W. 281.

In the case of *Chauncey et al. v. Dyke Bros. et al.,* 55 C. C. A. 579, 119 Fed. 1, the United States Circuit Court of Appeals for the Eighth Circuit, in construing the mechanic's lien provisions of the statutes of Arkansas, said:

"The lien law in question is a remedial statute. It was enacted to secure to laborers, artisans, and others who perform labor or furnish materials for the erection of buildings on the land of others payment for such services and materials, by giving them a lien on the structures which they have helped to create, instead of compelling them to rely merely on the personal security of the debtor. That such laws are fair and just, and that they also tend to encourage the erection of buildings by insuring payment for the labor and materials that are expended in their erection, has been generally recognized. *Davis v. Bilsland,* 18 Wall. 659, 661, 21 L. Ed. 969. As such laws are remedial in their nature, and are prompted by a wise policy, they should be liberally con-

strued in favor of the class of persons for whose benefit they were intended."

Under the foregoing authorities we do not think the filing of such statement was necessary, in view of the commencement of the proceedings within the four months, and all parties within such time being brought in, and having the same legal notice thereby of such claim as they would have had, had such claims been filed *ex parte* by the lien claimants within the required time with the clerk of the district court. These claims and proceedings in this case were filed and had in the district court; such filings being with the clerk thereof, the same officer with whom the *ex parte* lien claim or statement was required to be filed. Under such *status* we think that the statute was sufficiently complied with.

It further appears from the opinion of the referee that, in making up his findings of fact and conclusions of law, he considered the report filed in said proceedings by the commission appointed by the judge of said court to report on said mine in order to enable him to determine upon the advisability of having the receiver operate the same. The agreed statement of facts nowhere refers to this report, or provides that the same may be considered for any purpose in determining the claims for the liens, nor were the other creditors bound by the statements or recitals in the report of this commission; the same being merely *ex parte* in its nature, for the information of the judge relative to the *rem,* which was in the custody of the court by virtue of the receivership. The same was neither competent evidence for nor against the claimants as to the determination of said liens.

As to mine No. 2, the agreed statement of facts entered into by the attorneys for the parties seeking to have recognized the alleged lien, as well as the attorneys representing the opposing interests, stipulated that "mine No. 2 consists of a slope from which two entries have been turned, and from these entries rooms have been turned, and from these rooms coal has been mined solely for the purpose of sale and for the regular commercial purposes of the said mine; the said mine having reached this stage prior to the

period ·for which the employees, who worked therein, are claiming wages or earnings due." The referee in his opinion, states:

"It is also claimed that the men working in mine No. 2 were not· doing development work, coal having been sold out of such mine; but I do not think that this mine was in such a state of development, as will be seen from the report filed in this case by the commission appointed to report on such mine, as to release the company from liability to the laborers on development work."

Even if the report of this commission was competent evidence on this hearing, and its incompetency seems not to be controverted by the attorneys here, the agreed statement of facts excludes the same. Said statement recites:

"It is agreed that, with reference to the hearing upon and determination of the claims of the various claimants hereinafter named, being the plaintiffs and certain of the subsequent interveners herein, the following shall constitute the facts upon which such claims shall be heard and determined." By the solemn agreement of the attorneys of the parties seeking to enforce the liens, the report of that commission was excluded from the consideration of the referee.

The referee also in his report states that, although the labor performed on mine No. 2 may not have been on development work, still "the laborers would have a lien just the same, because it is held that, where several mine openings are on one claim, and are owned and worked as one mine under a common name, they will be treated as one mine so far as mechanics' liens are concerned," citing the case of *Treddinnick et al. v. Red Cloud Construction Mining Co. et al.,* 72 Cal. 78, 13 Pac. 152. In that case, the court said:

"The Code provides (section 1188, Code Civil Proc.): 'In every case in which one claim is filed against two or more buildings, mining ·claims, or other improvements owned by the same person, the person filing such claim must, at the same time, designate the amount due to him on each of such buildings, mining claims, or other improvements; otherwise the lien of such claims is postponed ·to other liens. The lien of such claimant does not extend beyond the ·amount designated, as against other creditors having liens, by judgment, mortgage, or otherwise, upon either of such buildings or

other improvements or upon the land upon which the same are situated.' It was proved that the entire property known as the 'Red Cloud Mine' was made up of what were originally several mining locations, but that these locations or claims had been conveyed to the Red Cloud Consolidated Mining Company, and had been by it consolidated together, and held, worked, and treated as one mine or claim. Under the circumstances shown we do not think the section invoked applies. It has been common in this state to consolidate two or more mining locations into one claim, and thereafter to treat and work them as one claim. After such a consolidation, the different locations cease to constitute different claims, and become in law, as they are in fact, only parts of one claim. The plaintiffs' labor was performed upon the property as a whole, and they were entitled as we think, under the proofs, to claim liens upon it as a whole."

This might be an authority in holding that, the labor performed and material furnished on mine No. 3 having contributed to the construction of an improvement, a lien was thereby subject to be enforced, and in the event mines No. 2 and No. 3 constituted one mining claim, then the lien of the materialmen and laborers arising out of mine No. 3 would be fastened on both mines, but we cannot see how this is any authority by which a lien is to be fastened upon both or either of said mines in favor of the laborers in mine No. 2, when such labor did not under the admitted facts have anything to do with the creating of an improvement, which is necessary under section 4817 (section 6151, Comp. Laws, Okla., 1909) Wilson's Rev. & Ann. St. 1903, to create the lien. In the brief of the counsel for the parties seeking to establish the lien on account of the labor performed in mine No. 2 there is no contention for the recognition of any lien except by virtue of section 4817, *supra*.

Those claiming amounts due for labor performed in mine No. 2 in mining coal for commercial purposes, and not for developing the mine, not thereby making an improvement, are not entitled to a lien or a preference as to such claims. The claimants for liens for labor performed and material furnished in mine No. 3 are entitled to such allowance. For under the agreed statement of facts

it is recited that "mine No. 3 consists of a slope, but had not, like mine No. 2, reached the stage of development and construction that rooms were turned and coal being mined therefrom for commercial purposes, and that the work of the employees in mine No. 3 was, for the period for which they claimed wages or earnings, still development work."

The case is accordingly remanded, with instructions to enter an order allowing the claims as they apply to mine No. 3 as preferred, or as liens to be enforced prior to all other claims, and that the claims for labor as to mine No. 2 be disallowed as preferred claims, but allowed as nonpreferred claims.

Since this case arose the Second Legislature of the State of Oklahoma passed an act entitled "An act to protect the wages of persons employed in and around mines in the state of Oklahoma." Under its provisions employees engaged in mining coal seem to have a lien upon the mining plant, not only for the labor performed in its development, but also in taking out coal for commercial purposes. Sess. Laws 1909, c. 23, art. 3, § 1, p. 386.

The judgment of the lower court will be modified as above indicated.

All the Justices concur.