Roy BROWNING and Ena R. Browning, Appellants,

v.

ALLIED HELICOPTER SERVICE, INC., a corporation, Appellee.

No. 6957.

United States Court of Appeals Tenth Circuit.

Rehearing Denied Nov. 5, 1962.

Richard U. Simon, Fort Worth, Tex., for appellants.

Alfred Stevenson and Stanley Huser, Jr., Holdenville, Okl., for appellee.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

HILL, Circuit Judge.

The controversy here results from an oral contract between appellants and appellee, whereby appellee agreed to spray, from the air, certain lands belonging to appellants for the purpose of killing timber and brush.

The action was originally filed in state court, with appellee, Allied Helicopter Service, Inc.,[1] as plaintiff, to recover, under the oral contract, from appellants, Roy and Ena R. Browning,[2] as defend-

ants, for the spraying services performed. The case was removed to the court below, trial was had to the court, without a jury, and resulted in a judgment generally in favor of the plaintiff, Allied. The lower court awarded a money judgment to Allied, decreed a statutory mechanic's lien for such sum, allowed the recovery of an attorney's fee and ordered foreclosure of the lien. The court below also denied recovery by the Brownings for claimed damage to lespedeza grass by reason of alleged wrongful spraying and for slander of title to the real property by the alleged wrongful filing of such mechanic's lien.

Appellants specify three points: (1) That the trial court's finding with reference to the number of acres of timber and brush sprayed was clearly erroneous; (2) that the trial court erred in decreeing a mechanic's lien upon the real property and awarding an attorney fee; and, (3) there was error in denying recovery upon Brownings' counterclaim for damages to crops and for slander of title.

The parties agree that there was an oral contract but disagree as to its terms. In this connection, the trial judge specifically found a contract between the parties whereby Allied was to furnish certain materials and perform certain labor in the spraying of 1500 acres for the purpose of killing brush and timber on the Brownings' land, for which the Brownings were to pay at the rate of $6.75 per acre, or the total sum of $10,-125.00. He further found that Allied performed the agreed terms and conditions of the contract and the Brownings became indebted to Allied in the sum of $10,125.00.[3] However, because the Coun-

1. Hereinafter referred to as Allied.
2. Hereinafter referred to as the Brownings.
3. "3. Beginning with a letter, dated April 26, 1960, from the defendant, Roy Browning, to the plaintiff, inquiring of plaintiff's spraying service, the parties hereto entered into negotiations which terminated in a contract between the parties on the 23rd day of May, 1960, by the terms of which plaintiff was to furnish certain material and perform certain la-

bor in the spraying of brush and timber upon 1500 acres of the above described real property and other real property not owned by the defendants but under lease to said defendants for the purpose of killing said brush and timber and for the improvement of said real property, in consideration for which defendants agreed to pay plaintiff the sum of $6.75 per acre sprayed, or a total of $10,125.00.

"4. Between the dates of May 25, 1960, and May 30, 1960, both inclusive, plain-

ty Agriculture Stabilization Conservation Office participated in the spraying project and paid Allied the sum of $732.37, a credit was allowed and the balance due from the Brownings to Allied was in the amount of $9,392.63.

The evidence adduced at the trial, shows the following unrefuted facts: That negotiations for the spraying contract were initiated by a letter dated April 29, 1960, from Browning to Allied; Allied answered the letter and thereafter at least three telephone conversations were had between Browning and Edward McGee, Director of Operations for Allied; these negotiations ended with a conference at the Brownings' ranch, where the spraying was to be done, on May 8, 1960, with Browning, his ranch manager, Dellis Timmons, Jack T. Newkirk, sales representative for Allied, Kenneth Turner, senior pilot for Allied, and Ben Norris, another Allied pilot, present; throughout the negotiations representatives of Allied advised Browning that in order for them to give him the reduced rate of $6.75 per acre, at least 1500 acres would have to be included in the spraying project; Browning stated on several occasions that he had approximately 1500 acres of timber and brush on the ranch; in addition to his own land, Browning included in the spraying project 160 acres he rented from one Cantrell; at this conference, the agreement was reached to proceed with the spraying, and Browning told the representatives of Allied there was approximately 1500 acres on his farm to be sprayed; the deal was made at this conference for Allied to spray 1500 acres at a price of $6.75 per acre; in air spraying operations it is customary to compute the number of acres sprayed by dividing the number of gallons of spray material used by 5; by use of this method of computation Allied arrived at the number of acres actually sprayed and, thereby, the amount of money due it from the Brownings; it is not unusual for this spray material to drift during the spraying operations; during the course of the contract negotiations Browning was advised and knew of the danger of the spray material drifting which might result in killing lespedeza grass and legumes; Browning had his alfalfa cut prior to the spraying to avoid the danger of drifting spray material; and during the spraying operation neither Browning nor his ranch manager, who was on the ranch during all of the operation, made any complaint or objection to Allied about the method of spray operation.

Browning, although present, did not testify at the trial to refute the testimony on behalf of Allied concerning the terms of the contract or its performance. Three witnesses were called to testify on Brownings' behalf: Roy B. David, the President of Allied, as an adverse witness, stated only that he was President of Allied; the other two witnesses were Timmons, the ranch manager, and J. H. Henley, who had the spraying contract with Browning in 1960. The most that may be said of their testimony is that, when considered together with the evidence on behalf of Allied, it created some issues of fact. The trial court determined those issues of fact in favor of Allied and we must conclude from the record that the Findings of Fact by the trial court are supported by substantial evidence and must stand.

Appellants' second point involves only a question of law. To resolve this question we must look to the statutory law of Oklahoma, providing for mechanic's liens upon real property. The parties agree

tiff performed the terms and conditions of the contract as agreed upon by the parties and sprayed the 1500 acres of land, which was agreed to be sprayed, with the proper concentrate and distribution of chemical as agreed upon. Plaintiff performed all of the conditions and re-

quirements contained in said contract in a workmanlike manner and in a reasonable and prudent manner, all in accordance with the terms thereof; and by reason thereof, defendants became indebted to the plaintiff in the total sum of $10,125.00."

we are governed by 42 Okl.St.Ann. § 141.[4]

■ Statutory liens, such as we are here considering, are in derogation of the common law, exist only by reason of positive legislative action, and should be applied only to those cases expressly provided for in the statute.[5]

Our careful reading of Section 141 makes it apparent that the labor performed or material furnished, in order to be lienable, must be "for the erection, alteration or repair of any building, improvement or structure thereon" or "in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements."

Appellee, in its effort to sustain the lien, lays stress upon the many definitions of the word "improvement" in order to convince us that the work done and materials furnished here tended to improve the real property, thereby giving it a lien. The word "improvement" as used in Section 141 is used in a different sense. The cutting of weeds or grass on a tract of land may be said to improve the tract, but such work is not for the "erection, alteration or repair of any * * * improvement * * * thereon", and would not be sufficient to create a statutory lien. Appellee cites two Oklahoma cases to support its position, Peaceable Creek Coal Co. v. Jackson, 26 Okl. 1, 108 P. 409, and Green v. Reece, Okl., 261 P.2d 596, 39 A.L.R.2d 861. The Coal Com-

pany case simply holds a coal mine to be an improvement within the meaning of the Oklahoma lien statute. The Green case held that labor performed with a tractor and bulldozer in leveling and building up a vacant lot to enable future construction on the lot was lienable. In other words, the work done was a part of the construction of an improvement upon the land. The facts of this case do not indicate any construction, present or anticipated, upon the Browning land and neither of the two cases is applicable.

■ The spraying of timber and brush in this case was not for the "erection, alteration or repair of any building, improvement or structure * * * *" and therefore it is not lienable under Section 141. It follows that the attorney's fee allowed below in connection with the decreeing of a statutory lien must also fail.

By counterclaim the Brownings sought to recover from Allied the sum of $2000, of which, the amount of $1000 is for the alleged wrongful spraying of approximately 100 acres of lespedeza grass which resulted in the killing of the grass, and the additional amount of $1000 for slander of title by reason of the alleged wrongful filing of the mechanic's lien upon the Brownings' real property. The trial court denied recovery as to both items.

The merits of the claim for damages to the grass was determined by the court below from the facts as it found them.[6]

4. "Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, or furnish material for the erection, alteration or repair of any building, improvement or structure thereon or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements, * * *; or who shall build, alter, repair or furnish labor or material for buildings, altering, or repairing any fence or foot walk in or upon said land, or any sidewalk in any street abutting such land, shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances. * * * *"

5. Harriss v. Parks, 77 Okl. 197, 187 P. 470; American Tank & Equipment Co. v. T. E. Wiggins, Inc., 170 Okl. 504, 42 P. 2d 115; Pace v. National Bank of Commerce of Tulsa, 190 Okl. 503, 125 P.2d 178; Statser v. Chickasaw Lumber Company, Okl., 327 P.2d 686.

6. "6. No damage or injury occurred to the defendant's land and premises, except that which is normally incident to a reasonably and prudently conducted spraying operation and which was discussed and contemplated by the parties during their negotiations prior to the time the spraying contract was finalized; and the defendants are not entitled to recover any damages by reason of their answer and counterclaim on file herein."

Again, our query goes to the sufficiency of the evidence to support such finding. The undisputed testimony set out above shows that discussions were had during the contract negotiations concerning this item. Browning was advised and knew that the drifting of the spray material might kill the lespedeza grass and alfalfa, what he should do about it, and that he had his alfalfa cut before the spraying commenced; and Brownings' witness Henley testified that where spraying is done adjacent to lespedeza or legumes, it is not unusual for the drifting spray to kill such growing crops. The Brownings' witness, Timmons, although testifying that only on one occasion during the week of the spraying operations did he observe any drift of the spray, admitted no complaint or objection was made to Allied concerning the method of operation.

█ From all the evidence in the case, we conclude that the trial court was fully justified in finding that no damage or injury occurred to the Brownings' crops "except that which is normally incident to a reasonably and prudently conducted spraying operation and which was discussed and contemplated by the parties during their negotiations prior to the time the spraying contract was finalized."

Appellants make one other contention that should be considered. They ask, in the event we find the mechanic's lien to be invalid, that their counterclaim for slander of title be remanded for trial. We are, of course, bound by the record we have before us and we agree with counsel for appellee that there is a complete absence of evidence in the record to support the claim and no attempt was made to preserve appellants' rights under it. The trial court's disposition of the counterclaim must be sustained.

The judgment of the trial court awarding the sum of $9,392.63 to appellee and its denial of .recovery to appellants upon their counterclaim is affirmed, but, that portion of the judgment decreeing a stat-

utory lien upon appellants' real property in the amount of the money judgment and the allowance of attorney fees in connection with such lien is reversed.