**UNITED BENEFIT LIFE INSURANCE CO.,**
a corporation, Plaintiff in Error,

v.

**NORMAN LUMBER COMPANY,** a corporation, and **CAP Interiors, Inc.,** a corporation, Defendants in Error.

No. 42588.

Supreme Court of Oklahoma.

April 20, 1971.

William G. Paul, John D. Hastie, Crowe, Boxley, Dunlevy, Thweatt, Swinford &

Johnson, Oklahoma City, for plaintiff in error.

Fielding D. Haas, T. R. Benedum, and Ben Benedum, Norman, for defendant in error, Norman Lumber Co.

W. Samuel Dykeman, Oklahoma City, for defendant in error, CAP Interiors, Inc.

HODGES, Justice.

This appeal involves a materialmens lien foreclosure case tried without a jury. It was held that defendant CAP Interiors had a valid lien upon the carpet and carpet pads in the six homes foreclosed; that the defendant Norman Lumber Company had a valid lien upon materials furnished; and that plaintiff in error, United Benefit Life Insurance Co.'s mortgage was inferior to said liens. Judgment affirmed.

The first proposition is whether the carpet and carpet pad furnished by CAP were lienable items. United maintains that these items are personalty not meant to be permanently affixed to the realty and therefore are not lienable items. Further, United maintains that under 42 O.S.1961, Section 141, these items are furnishings and not covered by the language of such statute. The parties stipulated as to the facts of the carpeting and pads as follows in the material parts:

"That all six of the houses were new and the carpets were installed upon completion of initial construction of the homes and prior to first occupancy; that the ground floors of all houses over which the carpets were laid are concrete and the second story floors over which carpets were laid are rough unfinished plywood; that the carpets and carpet pads are cut to fit the size of the room; that on the concrete floors a product called "Roberts pad cement", which is a long lasting glue, is placed on the concrete between the carpet pad around the edges of the carpet pad and at various intervals across the room of approximately every 4½' on the rough unfinished plywood, the carpet pad is stapled with ⅜" staples around the edges of the

carpet pad and across the pad approximately every 4½'; that after the pad is down, tack strips, which is a piece of wood ¼" thick and 1⅛" wide with ½" tacks sticking up ⅝" approximately every ¼" from the top of the board, are nailed around the edges of the room to the floor with ¾" nails placed approximately every 4" to 5"; that the carpet is attached to the tack strips by means of said ½" tacks and then stretched to the other sides of the room with power stretchers; that the carpet pad, once installed, cannot be removed without destruction of the same as a usable product, but the carpeting itself may be removed without damage to the carpeting."

The test is whether the article or item is permanently affixed to the realty or as set out in 60 O.S.1961, Section 7, " * * * or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws." United cites the case of Hartford Fire Insurance Co. v. Balch, Okl., 350 P.2d 514 (1960), wherein it was held that a carpet was not permanently affixed to the realty and was personal property. This case involved an insurance question. The court in the Hartford case found that the carpet was loosely tacked and glued in place; that the mortgage on the premises did not include the carpet; that the glue was meant to keep it from slipping and it was not the intention of the owners that the carpet was to remain as part of the realty. The courts said, "it appears to us from the above evidence that the small amount of glue used around the edges of the pad, and the small tacks on the edges of the carpet were for the purpose of holding it in place and not for fixing it permanently to the floor." In the present case, if the carpet was removed the ground floor would then be a concrete slab, the second floor an unfinished rough plywood. The glue used to hold down the carpet was a long lasting glue and the tacks were used with great frequency. The carpet was not excepted from the mortgage. The carpet pad would be destroyed if removed. From the circum-

stances in this case it is apparent that the owner intended that the carpet stay affixed to the realty and as such is a lienable item as the carpet and pads are an improvement upon the property in conformance with the test set out in Peaceable Creek Coal Co. v. Jackson, 26 Okl. 1, 108 P. 409, which in abbreviated form says:

"Said section being considered in connection with its general scope of application, it is reasonably clear that the word "improvement" was used in its ordinary and general sense or acceptation, and includes any and every character of improvement upon realty."

■ United next contends that the course of dealing by Norman Lumber Company, through its manager, Mr. O and the Executives Homes Co., was such that Norman Lumber has waived filing liens on the properties in question; and has by equitable estoppel lost its right to assert the liens. It is necessary to review the evidence in summary as the test in cases of equitable cognizance is whether the holding of the trial court is against the clear weight of the evidence. In re Hornback's Estate, Okl., 475 P.2d 184 (1970).

The principal testimony on behalf of United came from Mr. J, builder-contractor of the homes in controversy. He stated that he and Mr. O had business dealings over a considerable period of time involving joint ventures; that he had purchased materials from Mr. O's Norman Lumber Co. for the purpose of home construction; he had notes signed in favor of Mr. O for past debts owed, and frequent contract and business dealings involving the houses in question and others. Mr. J also testified that because of the past due debts he had with Norman Lumber he had agreed with Mr. O, any payments he made would be applied to the older debts first and not for the materials purchased currently for the building of the homes involved herein. He testified he was concerned with the lien rights on the homes and had received a promise from Mr. O that none of the lien rights would be asserted. Mr. J said that each time he made a payment on the account he would ask Mr. O about the liens and each time would receive assurance that none would be filed. He also indicated that Mr. O was familiar with the houses being built, when they were near completion, and generally when they would be sold; that Mr. O knew these conditions because of his close frequent association with Mr. J.

The closing of the loans on the houses was done by Southwest Title and Trust Co. Two employees of Southwest testified that Mr. O was physically present when at least three of the closings were made and that he was aware that Mr. J was closing a loan on the houses in question; that Mr. O on occasion in the past informed them of outstanding bills on certain houses upon which they were closing loans and they had always made provision for payment of the bills. They testified however, he made no mention of the bills outstanding regarding any of these homes. Copies of deposit slips and checks regarding the closings and payment to Mr. O were introduced purportedly to show that the funds from which Mr. J paid Norman Lumber were derived from the sale of the houses in question. Also, the affidavits of payment of all materials and labor signed by Mr. J on five of the houses in question was introduced. These affidavits sworn to by Mr. J stated that all bills had been paid when in fact they had not.

Mr. O denied any agreement with Mr. J to forego filing of liens and denied that he was present when the house loans were closed at Southwest. In this connection it is noteworthy that Mr. J could not recall if Mr. O had been present at any of the loan closings.

United asserts that the evidence is overwhelming and the judgment of the trial court is against the clear weight of this evidence.

■ The only evidence regarding the agreement to waive or forego filing of liens is from Mr. J and Mr. O. Mr. J says that such agreement was made each time a payment was made and Mr. O says no agreement was made. Both agreed however,

that any payments made would be applied to old accounts where lien rights had expired. Mr. J testified that the reason he swore under oath that all bids had been paid when in fact this was not true was that he had an agreement that no liens would be filed. The trial court did not accede to this position. The evidence on this point as above shown, is conflicting, but the trial court's finding is not against the clear weight of the evidence. Under such circumstances the finding should not be disturbed by appellate review.

United next asserts that Mr. O's conduct estopped his assertion of liens upon the houses in question. The course of conduct above outlined between Mr. O and Mr. J, the testimony of two Southwest Title employees about Mr. O, being present at some of the closings, and the knowledge of Mr. O concerning the source of funds out of which Mr. J paid Norman Lumber, along with other attendant circumstances, is asserted to be the clear weight of evidence for their position. United is attempting to use conflicting evidence on circumstantial matters to prove a definite fact. Mr. O testified that he was not at any of the closings; that he knew that Mr. J had sources of income other than the houses in question; that he did not know of Mr. J's dire financial circumstances until sometime late in the period of transactions, and he did not know that the funds being paid to him were funds from the sale of the houses in controversy. In response to a question concerning whether Mr. O was present at any of the closing of the houses in question, Mr. J stated that he did not know.

United cites some authority for its position, but the facts and the conflicting testimony in the case are such that the trial judge has found opposite to their position with evidence sufficient to sustain the clear weight of the evidence test.

■ For its final proposition United asserts that it should receive credit for not less than $14,269.49, which were funds paid to Norman Lumber by Mr. J that came from the loans on the houses in controversy. The proposition involves application of the following principle of law as stated in a similar case in Georgia State Savings Association v. Sun Lumber Co., 138 Okl. 11, 280 P. 281 (1929):

"A materialman, corporation, who has a lien or liens upon real estate improvements for material sold and furnished the owner is ordinarily not required to apply payments made it by such owner to any specific account or debt owing by the owner or lien therefor, unless so directed by the debtor, but may apply the payments as it sees fit and such application will not be disturbed where made in good faith and without notice of any claim of superior right or equities of third parties in the funds so paid."

■ In applying this principle, United again asserts that Mr. O had knowledge of the source of Mr. J's funds from which Norman Lumber was paid. Mr. O, however, denied any knowledge of the source of funds or notice of any superior rights or equities by United in the funds paid. United takes the position that under the circumstances and due to the constant involvements between Mr. O and Mr. J, it was impossible for Mr. O not to know Mr. J's source of funds and United's prior claim. While Mr. O may reasonably assume that the building project require some financing by Mr. J, he is not burdened with knowledge of prior equities involving his liens unless he was specifically aware of the purpose and source of the payment. Again the evidence is conflicting, but the trial court in its general finding found against the position of United. The holding is not against the clear weight of the evidence, and for that reason, the judgment should not be disturbed.

Judgment affirmed.

All Justices concur.