The Attorney General is in receipt of your opinion wherein you ask, in effect, the following questions: 1. Must the State Board of Affairs comply with the Competitive Bidding Act of 1974, 61 O.S. 101 [61-101] — 61 O.S. 134 [61-134] (1974) as it applies to the following situations? a. Supplying and installing carpeting, new installation or replacement; b. Supplying and installing telephone equipment, new installation, outright purchase or lease agreements; c. Supplying and installing steam boilers, new installation, maintenance or repairs; d. Supplying and installing radio equipment, new installation, maintenance or repairs; e. Supplying and installing x-ray equipment, new installation, maintenance or repairs; f. Supplying and installing closed-circuit TV equipment new installation, maintenance or repairs; g. Supplying and installing air-conditioning equipment, new installation, maintenance or repairs; and h. Supplying and installing chain-link and barbed-wired fencing, new installation, maintenance or repairs. 2. Must a public body comply with the prevailing wage rates at 40 O.S. 196.62 [40-196.62] (1971)? The Competitive Bidding Act of 1974 codified as 61 O.S. 101 [61-101] et seq. (1974), as amended (hereafter "Bidding Act"), establishes the procedures by which a state agency shall award contracts for "public construction" projects. As defined in the Bidding Act, "public construction contracts" refer to any contract, in excess of $7,500, awarded for "making any public improvements or constructing any public building or making repairs to the same . . . ." Bidding Act, 61 O.S. 102.4 [61-102.4]. The term "public improvement" is further defined in 61 O.S. 102.6 [61-102.6]: "Public improvement" means any beneficial or valuable change or addition, betterment, enhancement or amelioration of or upon any real property, or interest therein, belonging to a public agency, intended to enhance its value, beauty or utility or to adapt it to new or further purposes. The term does not include the direct purchase of materials, equipment or supplies by a public agency . . . ." In construing the Bidding Act, the Court, in Carpet City, Inc. v. Stillwater Municipal Hospital Auth., Old. 536 P.2d 335 (1976), declared a legislative intent in the Act to prevent splitting public construction contracts into partial contracts to avoid the requirements of the Act. 536 P.2d 339. Moreover: "The Bidding Act was not adopted to be avoided. It is to be strictly followed." 636 P.2d 339. The Carpet City Court defined the term "construction" at 536 P.2d 338: "The term construction with reference to a building means to put together the materials and constituent parts used therein their proper place and order. Scharff v. Southern Illinois Construction Co.,115 Mo.App. 167, 92 S.W. 126, 130 (1906); Olney v. Hutt,261 Iowa 1379, 105 N.W.2d 515, 520 (1960). A hospital is more than a mere building of four walls and a roof. See Hollis v. Erwin, 237 Ark. 606, 374 S.W.2d 828, 833 (1964). Certainly where the specifications of the architect require carpet and its installation as an essential part of the construction of a public building, the bids for it are subject to the provisions of the Act." While Carpet City, supra, was concerned with new construction, the appreciation of the Bidding Act applies equally to improvements upon existing structures on real property which has the effect of enhancement of value, beauty, utility or adoption to new or further purposes. 61 O.S. 102.6 [61-102.6]. The exclusionary language — "the direct purchase of materials, equipment or supplies" — refers to those items the acquisition of which is governed by the Competitive Bidding Act, 74 O.S. 86.1 [74-86.1] et seq. (1971), as amended, which prescribes methods of purchase of "supplies, equipment or materials" required for and consumed by state agencies. 74 O.S. 86.4 [74-86.4] (1972). Whether a particular contract may be characterized as within the purview of the Bidding Act or the Central Purchasing Act is, in the main, a question of fact depending upon the nature of the purchase, the permanency of the installation, the mode and manner of use of the equipment or materials. If the equipment, materials or other improvements tend to be affixed or to furnish a relatively permanent accession to real property, the Bidding Act is applicable. See Gray v. Prudential Ins. Co., 182 Okl. 342,77 P.2d 563 (1948); United Benefit Life Ins. Co. v. Norman Lumber Co., Okl. 484 P.2d 527 (1971). With respect to your second question, the provisions of 40 O.S. 196.1 [40-196.1] et seq. (1971), governs "minimum wages and public works." The policy of the act is stated at 40 O.S. 196.1 [40-196.1] (1971), as follows: "It is hereby declared to be the policy of the State of Oklahoma that wages of no less than the prevailing hourly rate of wages for work of similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work." The act defines "construction" to include construction, reconstruction, improvement, enlargement, alteration, painting and decorating, or major repairs, 40 O.S. 193.3 [40-193.3](1) (1971). The "prevailing hourly rate of wages" means the wages paid generally in the locality in which the public works are being performed to workmen engaged in a work of similar character. 40 O.S. 186.3 [40-186.3](3) (1971). The act further defines "public body" as including the State, any officer, board or commission of the State or any other political subdivision. 40 O.S. 196.2 [40-196.2](6) (1971). "Public works" is defined in 40 O.S. 196.2 [40-196.2](7): ". . . all fixed works constructed for public use except works constructed by and for any public utility company or any drainage or any conservation district whether or not done under the public supervision or direction or paid for wholly or in part out of the public funds." The only exemption from the wage scale is "maintenance work," 40 O.S. 196.1 [40-196.1]. 40 O.S. 196.2 [40-196.2](5) defines "maintenance work" to mean the repair but not the replacement of existing facilities where the size, type or extent of the existing facilities is not thereby changed or increased. The Board of Public Affairs, a public body not specifically exempted, is required to comply with those provisions of 40 O.S. 196.1 [40-196.1], et seq. (1971), as amended, except for maintenance contracts. It is, therefore, the official opinion of the Attorney General: 1. The State Board of Public Affairs is required to comply with the provisions of Competitive Bidding Act, 61 O.S. 101 [61-101], et seq. (1974), as amended, in all contracts in excess of $7,500, the purpose of which is to improve, repair or construct public buildings, including the enhancement of value, beauty, utility or adoption to new or further purposes. Whether a specific contract is subject to the Competitive Bidding Act is a question of fact. 2. The State Board of Public Affairs is required to comply with the provisions of 40 O.S. 196.1 [40-196.1] et seq. (1971), as amended, with regard to minimum wages on public works, except for maintenance contracts as that term is defined therein. (STEPHEN F. SHANBOUR) (ksg)