### In re PRODUCERS ENERGY CORP., Debtor,

**Roy Roscoe DIXON and Betty Ann Dixon, Plaintiffs,**

**v.**

**Charles C. KELLEY, Trustee, Penn Square Bank, N. A., a National Banking Association, Turner Brothers, Inc., James Wilkett d/b/a Wilkett Trucking Co., Little Rock Road Machinery Co., Quail Creek Coal Joint Venture, by its Nominee, John F. Freeman, John Doe and Mary Roe, Defendants,**

**and**

**Thomas F. Freeman and Maple Oil Company, Intervening Defendants.**

Bankruptcy No. 79–01876.
Adv. Nos. 79–0010, 79–0019.

United States Bankruptcy Court,
W. D. Oklahoma.

June 11, 1981.

670

James S. Drennan, Oklahoma City, Okl., for Maple Oil Co.

Richard L. Bohanon and Lynn A. Pringle, Oklahoma City, Okl., for Roy Roscoe Dixon and Betty Ann Dixon.

Robert J. Petrick, Oklahoma City, Okl., for Turner Brothers, Inc.

Charles C. Kelley, Oklahoma City, Okl., trustee.

Stephen P. Friot, Oklahoma City, Okl., for Thomas F. Freeman and John F. Freeman.

Herbert Kenney, Oklahoma City, Okl., for Little Rock Road Machinery Co.

## OPINION

DAVID KLINE, Bankruptcy Judge.

### STATEMENT

The debtor, defendant Producers Energy Corporation, was engaged in coal mining operations on the property of plaintiffs Roy and Betty Dixon under a mining lease. On December 17, 1979, the Dixons by adversary proceeding and complaint asserted ownership over all machinery and tools used in Producers' mining operation. The complaint [ # 78–0010] named Producers and all other entities as defendants whom plaintiffs believed might assert interests in such property.

Defendants Penn Square Bank and James Wilkett d/b/a Wilkett Trucking Co. failed to answer the complaint. Defendant Turner Brothers, Inc., filed an answer, counterclaim and cross-claim based on miner's, mechanic's and materialman's liens. Defendant Thomas Freeman, as Penn Square Bank's assignee, intervened as a defendant and claimed security interests in all of Producers accounts receivable, a coal crusher, an office trailer, and certain office furniture and equipment.

Quail Creek Coal Joint Venture, by its nominee John F. Freeman, was also named a defendant. John Freeman answered individually stating that he had no authority to receive process on behalf of Quail Creek. The answer further stated that Quail Creek had no interest in any of the equipment listed in plaintiffs' complaint but remarked that Thomas Freeman, his brother, had a superior security interest. Quail Creek Joint Venture filed no other answer.

Maple Oil Co. intervened as a defendant claiming an interest by virtue of an asserted mechanic's and materialman's lien. Defendant Little Rock Road Machinery Company filed an answer claiming a security interest in a certain pump. The chapter 7 trustee appeared and answered the complaint but made no affirmative claims.

Adversary proceeding # 79–0019 was commenced with a complaint filed by Thomas Freeman against certain of the parties involved in adversary proceeding # 79–0010 wherein a declaration of the rights of those asserting interests in Producers' assets was sought. Since the same parties, issues and property are involved in both proceedings, they have been consolidated for decision pursuant to motions for summary judgment filed by Little Rock, Dixon, Turner Brothers and Thomas Freeman.

### FACTS

Producers Energy Corp. was formed in 1978 by Mr. R. Robert Grant and Mr. Joe Watkins to acquire coal leases and form coal mining joint ventures. Quail Creek Coal Joint Venture, promoted by Grant, was also originated in 1978 to serve as a coal investment vehicle for the individual joint ventures.

In August of 1978, Mr. and Mrs. Roy R. Dixon, as lessors, entered into a coal mining lease with Producers, as lessee, which was subsequently assigned by Producers to Quail Creek Coal Joint Venture. Under the lease terms Producers was to pay the Dixons certain royalties. Because of a quiet title action in the state court, Producers was required to pay a portion of the monthly royalties directly to the Dixons and the remainder of the royalties into an escrow bank account. The lease further provided:

" ... Should Lessee default in the payment of royalties hereunder or breach or default remain incurred for a period of sixty (60) days after notice thereof is given in writing by Lessor to Lessee, then Lessor may, at its option, terminate this lease and thereupon reenter and take possession of the leased premises. Lessee shall, however, have the right for a period of six (6) months thereafter, after paying all royalties due, to remove all machinery and equipment owned by it from the leased premises."

On November 14, 1978, Producers entered into a contract with Turner Brothers, Inc., Charles R. Turner, and his three sons. The contract contained employment provisions with stated salaries for each of the four Turners to conduct the contemplated coal mining operations and also provided for the leasing of certain mining equipment to Producers Energy Corp. by Turner Brothers, Inc.

Mining operations at the Quail Creek Coal mine began in late 1978. In January, 1979, Mr. Grant approached Mr. Thomas F. Freeman regarding Producers' need for additional operating capital. Thomas Freeman and his brother, John Freeman, had formed a partnership, Freeman Brothers, a joint venturer in Quail Creek Coal Joint Venture. Thomas Freeman was also a partner in Parceners, Ltd., another of the Quail Creek Joint Venturers. On January 19, 1979, Freeman Brothers loaned $200,000.00 to Producers and took Producers' unsecured promissory note. On the same day Parceners, Ltd. also loaned $50,000.00, unsecured, to Producers.

On January 5, 1979, Producers purchased a Gorman-Rupp Water Pump from the Little Rock Road Machinery Co. and gave a promissory note for $7,963.71 and a security interest in the water pump. Little Rock Road Machinery filed a financing statement in Oklahoma County on January 30, 1979.

On March 16, 1979, Producers executed a promissory note to Penn Square Bank for $160,000.00 guaranteed by Thomas and John Freeman. This loan was secured by equipment used in the operation of Producers' business as well as all inventory, contract rights, accounts receivable, other property and proceeds. A financing statement was then filed in Oklahoma County on March 22, 1979.

On April 5, 1979, Producers executed a second promissory note to Penn Square Bank for $117,000.00, again guaranteed by Thomas and John Freeman, to finance the purchase of a coal crusher. The bank was granted a security interest in the coal crusher and on April 11, 1979 a financing statement was filed in Oklahoma County.

On April 27, 1979, the Dixons notified Producers by letter that Producers was in default on that portion of the royalty payments payable directly to the Dixons for March, 1979. Thereafter this default was cured.

On June 27, 1979, Producers executed a third promissory note to the Penn Square Bank for $50,000.00 also guaranteed by the Freemans and secured by Producers' accounts receivable and inventory and on July 2, 1979 a financing statement thereon was filed in Oklahoma County.

On August 13, 1979, Turner Brothers, Inc., filed a "Miner's and Mechanic's or Materialman's Lien Statement" for $274,598.68 in Haskell County.

On September 4, 1979, the Dixons notified Producers that it was again in default for July royalties.

On September 10, 1979, Turner Brothers, Inc., filed a second lien statement in Haskell County for $398,000.00.

On October 12, 1979, Producers was in default on the note to Little Rock Road Machinery Company and Little Rock took possession of the pump. On October 16, 1979, Producers filed its voluntary chapter 7 petition in this court.

On October 23, 1979, Maple Oil Company filed a $58,839.31 mechanic's and materialman's lien statement with the Haskell County Court Clerk for fuel, parts, service, oil, gas and lubricants furnished by Maple to Producers from July to September of 1979. Later, on January 5, 1980, this lien statement was filed with the Haskell County Clerk.

On January 8, 1980, the Penn Square Bank assigned to Thomas Freeman the three notes that Producers had executed in the bank's favor which assignment covered the bank's entire interest in the notes and collateral.

Freeman, Little Rock, Dixon and Turner have all filed Motions for Summary Judgment claiming various interests in the same or all of Producers' assets. Although Maple Oil Company has not filed such a motion, it

also claims such an interest. The claims of each of these creditors will be dealt with separately.

## LAW

### Maple Oil Company

Maple Oil Company asserts a mechanic's and materialman's lien on all of Producers' assets. At the time Maple Oil Company's lien was filed, 42 Okla.Stat. (1971) 141 provided in part:

"Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, or furnish material for the erection, alteration or repair of any building, improvement or structure thereon or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements ... shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances. If the title to the land is not in the person with whom such contract was made, the lien shall be allowed on the buildings and improvements on such land separately from the real estate. Such liens shall be preferred to all other liens or encumbrances which may attach to or upon such land, buildings or improvements or either of them subsequent to the commencement of such buildings, the furnishing or putting up of such fixtures or machinery, ... or the making of any such repairs or improvements; and such lien shall follow said property and each and every part thereof, and be enforceable against the said property wherever the same may be found, and compliance with the provisions of this Act shall constitute constructive notice of the claimant's lien to all purchasers and encumbrances of said property or any part thereof, subsequent to the date of the furnishing of the first item of material or the date of the performance of the first labor."

In *Browning v. Allied Helicopter Service, Inc.,* 309 F.2d 712 (CA 10 1962), the Court of Appeals noted:

"Statutory liens, such as we are here considering, are in derogation of the common law, exist only by reason of positive legislative action, *and should be applied only to those cases expressly provided for in the statute.*

"Our careful reading of Section 141 makes it apparent that the labor performed or material furnished, in order to be lienable, must be 'for the erection, alteration or repair of any building, improvement or structure thereon' or 'in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements.' " (emphasis added)

In *Lively v. Evans-Howard Fire Brick Co.,* 115 Okl. 259, 242 P. 773 (1926) the court distinguished materials used for plant *construction,* equipment and completion from plant *operation,* by indicating that supplies necessary for the operation of a manufacturing establishment are such as pertain to the production of its output and do not include material or machinery necessary for the construction, equipment and completion of the plant. And this principle has been long applied to coal mine operations. In *Peaceable Creek Coal Co. v. Jackson,* 26 Okl. 1, 108 P. 409, 413 (1910) where prior to the enactment of the Oklahoma special miner's lien statute, liens for labor performed were asserted under Oklahoma's mechanic's and materialman's lien statute as to two coal mines, the court observed:

"Those claiming amounts due for labor performed in mine No. 2 in mining coal for commercial purposes, and not for developing the mine, not thereby making an improvement, are not entitled to a lien or a preference as to such claims. The claimants for liens for labor performed and material furnished in mine No. 3 are entitled to such allowance ..."

■ Clearly, the materials supplied by Maple from July to September of 1979, were supplied after the mine went into full operation, and were not furnished for use while the mine was still in its developmental stages. Thus Maple Oil Company is unentitled to assert a mechanic's or materi-

alman's lien under 42 Okla.Stat. (1971) § 141.

### Turner Brothers, Inc.

Turner Brothers, Inc. claims a lien on all of Producers' assets based upon 42 Okla. Stat. (1971) § 148 which provides:

"All miners and other employees *engaged in the work of developing and opening up coal mines, sinking of shafts, or construction of slopes* or drifts, the driving of entries, mining in coal, and every mechanic, builder, artisan, workman, laborer or other person who performs any *work or labor in and about such mines*, shall have as security for such work and labor performed, a lien therefor upon the buildings, machinery, equipment, inside or outside, income, franchises, leases or subleases and all other appurtenances and all property of the person, owner, agent, firm or corporation owning, constructing or operating such mine or mines, and all property in their possession or under their control, or permitted by the owner to be used *in the construction or operation thereof*, superior or paramount, whether prior in time or not, to that of all persons interested in such mines as managers, lessees, sublessees, operators, mortgagees, trustees and beneficiaries under trust or owners." (emphases added)

In *Riffe Petroleum Co. v. Great Nat. Corp., Inc.*, 614 P.2d 576 (Okl.S.Ct.1980) it was held that the supplier of a "tipple", a stationary piece of equipment which cleans, screens, sizes and loads coal into railroad cars, located some fourteen miles from the mine site, was not entitled to a lien under this statute in that the activities were not part of "opening up, development or construction" of the mine, or incidental to coal extraction operations, and did not take place "in and about" the mine.

■ The language of section 148 and its case interpretation indicate that such section provides liens *only* for *labor performed* and not for materials or equipment supplied.

The asserted Turner Brothers' lien is based on amounts owed for lease payments and expenses for equipment supplied under Turner Brothers' contract with Producers. No wages or salaries were involved. Thus Turner Brothers have no lien on the mine.

■ Additionally, since Turner Brothers' lien claim is based upon equipment rental such precludes Turners asserting a lien under § 141. In *Consolidated Cut Stone Co. v. Seidenbach*, 181 Okl. 578, 75 P.2d 442 (1937) it is noted:

". . . 42 Okl.St.Ann. §§ 141, 143, the general lien statutes, have never been extended by this court to involve equipment, except in cases where the lien was for labor and the tools or equipment became instrumentalities *in the performance* of the labor." (emphasis added)

Interestingly, 42 Okla.Stat. (1971) was amended effective May 30, 1980, to include leased or rented equipment.

### Little Rock Rock Road Machinery Co.

Little Rock claims a purchase money security interest in a pump sold by it. Freeman concedes the superiority of Little Rock's claim to the pump but other parties herein do assert interests therein.

Dixon relies on 60 Okla.Stat. (1971) § 8 which provides in part:

". . . Sluice-boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine."

Dixon urges that when the pump was used in the "working or developing" of the mine, it became a *fixture*. Dixon also cites 60 Okla.Stat. (1971) § 334 which provides:

"When a person affixes his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land, unless he chooses to require or permit the former to remove it: *Provided, that a tenant may remove from the demised premises at any time during the continuance of his term* any thing affixed thereto *for purpose of trade, manufac-*

ture, ornament or domestic use, *if* the removal can be *effected without injury* to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises." (emphases added)

Dixon suggests that since the second default on the royalty payments was never cured, Producers had no right to remove the pump and that when the lease was terminated, Dixon became the owner of the pump as a fixture. Under the lease agreement, Dixon's right to terminate the lease and reenter the premises did not arise until sixty days after written notice of default. The default notice was dated September 4, 1979. Little Rock took possession of the pump on October 12, 1979, only some thirty-eight days after the default notice and it is only inferable that at such time the lease was still in effect.

■ Moreover, under Oklahoma law, a tenant may remove anything affixed to the premises for the purpose of trade or manufacture so long as the lease is in effect and the premises is not injured. § 334, supra. This right of removal includes the tenant's mortgagee. *Gibson v. Exchange Nat. Bank of Pauls Valley*, 172 Okl. 106, 42 P.2d 511 (Okl.1935).

■ The instant pump was a portable unit mounted on a two-wheeled trailer and its removal could not have caused injury to the premises. Additionally, the use of the pump in the coal mine was for the *purpose* of *trade* or *manufacture* within the meaning of § 334, and Dixon has no standing to object to Little Rock's repossession thereof.

### Freeman and Dixon

In reliance on the security interests assigned to him by Penn Square Bank, Thomas F. Freeman seeks to recover all of Producers' accounts receivable and proceeds thereof, the coal crusher, an office trailer used on the premises, and designated office furniture and equipment. Dixon also claims the coal crusher and all other machinery and tools used in developing or working the mine under the previously referred to statutes.

A security interest attaches when there is an agreement that it attach, value is given, and the debtor acquires rights in the collateral. 12A Okla.Stat. (1971) § 9–204. As previously emphasized under 60 Okla.Stat. (1971) § 8 "... machinery or tools used in working or developing a mine, are to be deemed affixed to the mine."

Unquestionably the coal crusher was a piece of machinery used in *working the mine* and became a fixture under 60 Okla. Stat. (1971) § 8. However, the Oklahoma Code Comment to 12A O.S. § 9–204 states:

"(i) Three conditions must be satisfied for the existence of a security interest: (a) an agreement, (b) value be given, and (c) the debtor has rights in the security. ...

"There is no requirement that all three occur simultaneously. Quite often the agreement will be executed before the collateral is acquired, and perhaps before value is given. The security interest therefore attaches when the last necessary condition is satisfied. ..."

The coal crusher was *delivered* to the mine site on or about March 24, 1979. The security agreement between Producers and Penn Square Bank is dated April 5, 1979. Thus, the bank's security interest could not have attached until some twelve days after the coal crusher was delivered to and used at the mine site. The coal crusher in working the mine became a fixture under 60 Okla.Stat. (1971) § 8 before the bank's security interest attached. Read 12A Okla. Stat. (1971) § 9–313 as to priority of security interests.

■ Even though such machinery became a fixture, such does not vitiate the parties' rights under the lease agreement, which lease provided that if a default in the payment of royalties continued for a period of sixty days after written notice thereof, the lessor could terminate the lease, reenter and take possession of the premises. The lessee herein had the right, after paying all royalties due, to remove from the leased premises within six months, all machinery and equipment it owned.

Default notice was dated September 4, 1979. This case was commenced on October 16, 1979, when Producers filed its voluntary petition. Under 11 U.S.C. § 341, whatever interests Producers had in property then passed into the estate, but any interest Producers may have had in the machinery and equipment used in the mine was subject to the mortgage interest it had previously conveyed to Penn Square Bank and subsequently assigned by the bank to Freeman.

Thus, apart from the bankruptcy proceedings, the earliest date the lease could have been terminated under its terms was November 3, 1979, giving the lessee until approximately May 3, 1980 to pay the royalties in default and remove its machinery and equipment. This right is extended to the lessee's mortgage under the rationale of *Gibson v. Exchange Nat. Bank of Pauls Valley,* supra.

This adversary proceeding was commenced by Dixon on December 17, 1979 *prior* to the time Producers' right to pay the royalties in default, and recover the machinery and equipment—had expired. A party cannot be denied a right which existed at the commencement of an action where the power to exercise it was barred by the proceeding [11 U.S.C. § 362(a)(3)] and by its terms expired while the action was pending. Thus, upon payment of royalties in default to Dixon, Freeman may, within twenty days from the day the court's order and judgment becomes final herein, recover all machinery and equipment subject to his mortgage. Additionally, Freeman is entitled to recover all other Producers' assets which Freeman claims, and which do not constitute machinery or tools used in working or developing the mine, since Freeman possesses a valid, properly perfected security interest which is superior to all other interests which have been actively asserted by the parties herein.

## CONCLUSION

Thus:

1) Default judgment should be rendered against Penn Square Bank and James Wilkett d/b/a Wilkett Trucking Company for failure to answer.

2) The miner's, mechanic's and/or materialman's liens asserted by Maple Oil Co. and Turner Brothers, Inc., are null and void.

3) Little Rock Road Machinery Company is entitled to keep the repossessed pump which it initially sold.

4) Upon Thomas Freeman's payment, within twenty days from the date this court's order and judgment becomes final, of all royalties in default to Roy and Betty Dixon, the Dixons should turn over all of Producers' machinery and equipment now in their possession to Thomas Freeman.

5) Thomas Freeman's liens on Producers' accounts receivable, the office trailer, furniture and equipment is superior to any and all asserted by the other parties involved herein.

## ORDER AND JUDGMENT

The debtor, defendant Producers Energy Corporation, was engaged in coal mining operations on the property of plaintiffs Roy and Betty Dixon under a mining lease. On December 17, 1979, the Dixons by adversary proceeding and complaint asserted ownership over all machinery and tools used in Producers' mining operation. The complaint [# 78–0010] named Producers and all other entities as defendants whom plaintiffs believed might assert interests in such property.

Defendants Penn Square Bank and James Wilkett d/b/a Wilkett Trucking Co. failed to answer the complaint. Defendant Turner Brothers, Inc., filed an answer, counterclaim and crossclaim based on miner's, mechanic's and materialman's liens. Defendant Thomas Freeman, as Penn Square Bank's assignee, intervened as a defendant and claimed security interests in all of Producers' accounts receivable, a coal crusher, an office trailer, and certain office furniture and equipment.

Quail Creek Coal Joint Venture, by its nominee John F. Freeman, was also named a defendant. John Freeman answered individually stating that he had no authority to

receive process on behalf of Quail Creek. The answer further stated that Quail Creek had no interest in any of the equipment listed in plaintiffs' complaint but remarked that Thomas Freeman, his brother, had a superior security interest. Quail Creek Joint Venture filed no other answer.

Maple Oil Co. intervened as a defendant claiming an interest by virtue of an asserted mechanic's and materialman's lien. Defendant Little Rock Road Machinery Company filed an answer claiming a security interest in a certain pump. The chapter 7 trustee appeared and answered the complaint but made no affirmative claims.

Adversary proceeding # 79–0019 was commenced with a complaint filed by Thomas Freeman against certain of the parties involved in adversary proceeding # 79–0010 wherein a declaration of the rights of those asserting interests in Producers' assets was sought. Since the same parties, issues and property are involved in both proceedings, they have been consolidated for decision pursuant to motions for summary judgment filed by Little Rock, Dixon, Turner Brothers and Thomas Freeman.

After considering all submitted briefs and in conformity with the written opinion filed herewith (and made a part hereof) it is accordingly,

ORDERED, ADJUDGED and DECREED:

1) Default judgment is rendered against Penn Square Bank and James Wilkett d/b/a Wilkett Trucking Company.

2) The miner's, mechanic's and/or materialman's liens asserted by Maple Oil Co. and Turner Brothers, Inc., are declared null and void.

3) Little Rock Road Machinery Company is entitled to keep the repossessed pump (which it initially sold).

4) Upon Thomas Freeman's payment, within twenty days from the date this court's order and judgment becomes final, of all royalties in default to Roy and Betty Dixon, the Dixons shall immediately turn over to Thomas Freeman all of Producers'

machinery and equipment now in the Dixons' possession.

5) Thomas Freeman's liens on Producers' accounts receivable, the office trailer, furniture and equipment are superior to any and all asserted by the other parties involved herein.