Breitel, J.
In a contest between the assignee of a purchase-money financing sales contract and a subsequent mortgagee of a mobile home, the subsequent lienor has prevailed because the assignee had failed to make a timely refiling or equivalent provision as required by the Uniform Commercial Code in order to maintain its status as holder of a perfected security interest. The only issue is whether the mobile home is a motor vehicle under section 9-302 (subd. [1], par. [d]) of the code. If it is, a financing statement or equivalent affecting it must be filed and for failure to do so a subsequent lienor who has complied with the code prevails.
The code, with narrowly prescribed exceptions, provides that security interests in property are not perfected unless applicable financing statements are filed. Among the exceptions is “ a purchase money security interest in consumer goods ” with a further exception carved from the exception to the effect that “ filing is required to perfect such a security interest in a motor vehicle required to be licensed or registered in this state ” (Uniform Commercial Code, § 9-302, subd. [1], par. [d]).
The facts are undisputed. On April 24, 1962, the La Pumees purchased for their own personal use a house trailer also styled a “ mobile home.” It was 50 feet long and 10 feet wide. It contained five rooms, completely furnished. No further facts are offered whether this portable structure was the kind of mobile home which moves regularly on the highways or only requires a special permit each time it is taken on the highways. Under the Vehicle and Traffic Law it is a house trailer required to be licensed or registered if it is to be operated on the highways (§ 401, subd. 8). In connection with the purchase the La Pumees executed a retail installment contract, which on the date of purchase was assigned to plaintiff Albany Discount Corporation. The contract was filed on April 30, 1962, but was not refiled in May, 1965, after three years as required by the previously applicable Personal Property Law (§§ 65, 71). A subsequent possessor mortgaged the mobile home to defendant Mohawk National Bank in February, 1966. On a default in payments the bank seized the mobile home, and the prior lienor brought this action for conversion.
■ Under the code (§ 10-102), a security interest perfected when the code took effect in 1964, remained valid and perfected with *225 out additional filing in various circumstances. If, because of the lapse of time, the effect of the filing expired and the code required filing of a financing statement in that kind of transaction, then it is incumbent on the secured party to make some sort of new filing, either a refiling of the earlier paper, or a filing of a financing statement or a continuation statement, as may be appropriate (id.).
Whether a mobile home is more of a detachable land fixture than it is a vehicle is not an important aspect of this case, however significant it may be for others. If part of the realty there would have to be a filing under the code, but not in the same place as for chattels (§§ 9-313, 9-401, 9-402). More important and more troublesome is whether the mobile home is a vehicle at all. In the range between small campers hitched to an ordinary passenger automobile and large portable structures, too large, clumsy, and heavy to be moved except at very rare intervals, there is a great difference in value, use, and relation to the land.* The briefest consideration yields the view that precise definition is elusive, confirmed by the variety of definitions of motor vehicle, house coach and trailer contained in the Vehicle and Traffic Law (§§ 119,125,156). Of little or no importance is it whether a mobile home is more mobile than it is a home or more of a home than it is mobile, or whether the vernacular differences among camper, trailer, or mobile home should be accorded recognition in interpreting the Uniform Oommercial Code. The situation is one where functional criteria should be used almost exclusively in classification and terminology. Key to the analysis is that the Vehicle and Traffic Law is directed toward public safety, public liability and revenue. Article 9 of the code, in contrast, is concerned with credit transactions and the interests of the parties and others affected by such transactions.
*226 With such pragmatic considerations, whether there must be a filing of financing statements with respect to mobile homes should be determined by the usefulness of the filing requirement and the adequacy of notice that such a requirement would provide.
The code’s general plan is to exempt from filing requirements almost all purchase-money security transactions in consumer goods for limited purposes. Excepted from the exemption, and thus requiring filing, are “ motor vehicles ” subject to licensing or registration under vehicle registration laws (§ 9-302, subd. [1] , par. [d]; subd. [2]; Kripke, The Modernization of Commercial Security under the Uniform Commercial Code, 16 Law & Contemp. Prob. 183, 187, 188-190).
The separation of motor vehicles from other consumer goods reflected actual pre-code experience. It was recognized that most retail installment paper covers household goods and was not filed because it was not economical or necessary. In the case of the motor vehicle these factors were not present. (1954 Report of N. Y. Law Rev. Comm., Vol. 2, pp. 1087, 1104, 1197; 1 Gilmore, Security Interests in Personal Property, § 19.4, p. 534; Kripke, op. cit., supra, pp. 188-190; 2 Coogan, Hogan & Vagts, Secured Transactions Under the U. C. C. § 19.02, subd. [2] , at p. 1974; Kripke, The “ Secured Transactions ” Provisions of the Uniform Commercial Code, 35 Va. L. Rev. 577, 612-613). Motor vehicles are chattels of greater value than most consumer goods, such as appliances. Moreover, their greater value makes them likely subjects for refinancing and resale, and therefore by their nature they are likely to remain in the stream of commerce (Coogan, Hogan & Yagts, loe. cit., supra). And, of course, in the approximately 41 motor vehicle title certification States there is generally a substitute requirement for filing under the certification statutes (see Uniform Commercial Code, § 9-302, subd. [3], par. [b]; subd. [4]).
Most of the States which have title certification statutes treat motor vehicles separately for general registration purposes and for title certification purposes, and when they do they all but invariably include house trailers, without distinguishing mobile homes, under the title certification requirement (e.g., SmithHurd, Illinois Ann. Stat., ch. 95-%, § 3-101; Page’s Ohio Rev. Code, Ann., tit. 45, § 4505.13; N. J. S. A., tit. 39, § 39:10-2). Indeed, some States recognized the apparent inconsistency *227 between the general undefined phrase “motor vehicle” as employed in the code (§ 9-302, subd. [1], par. [d]; subd. [3]) and the State’s title certification law, and substituted more consistent language. Substituted phrases vary from “vehicle”, “ property for which certificate of title is required ”, or “ motor vehicle or trailer ” (Welsh, Security Interests in Motor Vehicles Under Section 9-302 of the Uniform Commercial Code, 37 U. Cin. L. Rev. 265, 286-290). This bolsters the view that the purpose of the code and uniformity of interpretation among the States will be fostered if the Vehicle and Traffic Law inclusion of a trailer as a motor vehicle for purposes of registration were applied (§ 401, subd. 8, par. a).
It is not significant that registration is required only if the house trailer is to be operated on the highway. That is true of automobiles too. They must be registered only if they are to be used on the public highway. Consequently, the code test is satisfied if the mobile home may be registered as a motor vehicle and the mobile home need not in fact have been registered. (The parties do not say whether the mobile home in this case was registered.)
It is of interest that the Review Committee for the Permanent Editorial Board of the Uniform Commercial Code under date of April 25, 1971 concluded not to change the reference to motor vehicles in section 9-302. It commented ‘ Public policy as to moblie homes ought not now to be frozen in a uniform Code. As they get larger, they cease to be mobile and are not regularly moved over the highways; thus it is not clear that registration like other trailers is the appropriate legal scheme.” (Review Comm., Art. 9 of U. C. C., Final Report, p. 237.) These views explicitly recognize the ‘ ‘ motor vehicle ’ ’ status of mobile homes while they suggest that neither uniformity nor registerability may prove to be ultimately determinative. However, if there is to be a demarcation because of increasing sizes or infrequency of movement of mobile homes, legislation, even if limited to vehicle registration laws, would seem to be indicated, if only because it would provide greater visibility and sharper distinctions by dimension, auxiliary equipment, and weight, than could decisional development.
On this view Special Term and the Appellate Division were correct in holding that a mobile home is a “ motor vehicle ’ ’ for *228 purposes of section 9-302 of the code. Consequently, financing statements with respect to purchase-money security interests in mobile homes must be filed if the security interests are to be perfected in the manner provided by the code. The subsequent lienor, the bank, was, therefore, entitled to summary judgment dismissing the complaint as to it, since plaintiff assignee had failed to maintain its lien against subsequent purchasers and lienors. In so concluding there is agreement with the holding in In re Vinarsky (287 F. Supp. 446 [N.D. N.Y.]) and disagreement with that in Recchio v. Manufacturers & Traders Trust Co. (55 Misc 2d 788).
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, and Jasen concur; Judge Gibson taking no part.
Order affirmed.

 In other contexts the dissimilarity among the various forms of house trailers has been noted, see Mobile Home Owners v. Chatham (33 A D 2d 78); Village of Harriman v. Kabinoff (40 Misc 2d 387); Morin v. Zoning Bd. (102 R. I. 457); City of Rutland v. Keiffer (124 Vt. 357), all involving municipal zoning ordinances as they affect “ house trailers In Palethorpe v. Thompson (171 So. 2d 526 [Fla.]), the issue was whether a mobile home was a motor vehicle for purposes of the motor vehicle exemption from a personal property tax. The court concluded that only while a house trailer retains its primary character as a motor vehicle and is used and kept in a condition for use on a highway is it entitled to exemption as a motor vehicle.