**Leslie NEWELL, Appellant,**

v.

**NATIONAL BANK OF ALASKA, Appellee.**

No. 5437.

Supreme Court of Alaska.

June 18, 1982.

---

M. Ashley Dickerson, Anchorage, for appellant.

Thomas R. Tatka, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.*

## OPINION

DIMOND, Senior Justice.

Appellant Leslie Newell brought this action against Ray and Samantha Charlton, the National Bank of Alaska (NBA), and one other party in connection with the default by the Charltons on a promissory note which they had executed in favor of Newell when they purchased his mobile home or house trailer [1] in 1978. The suit against the Charltons sought judgment against them on the note, and asserted a lien against the mobile home which, Newell contended, served as security on the promissory note. NBA was later joined as a party in the suit when Newell learned that NBA also claimed a security interest in the mobile home.

The sole issue between Newell and NBA concerns which party has the superior security interest. NBA sought to perfect its interest by filing the requisite documents with the Motor Vehicle Division, according to the certificate of title provisions of the Motor Vehicle Code. Newell sought to perfect his interest by filing the promissory note with the Anchorage district recorder several months later.[2] Each party claims that its method of filing its respective security interest was the exclusive method of perfecting a security interest in the mobile home. Summary judgment was granted in favor of NBA, and Newell has appealed.

Perfection of security interests and priority of perfected interests in personal property and fixtures is generally governed by the provisions of the Uniform Commercial Code—Secured Transactions.[3] Under the UCC, the filing of a financing statement to perfect a security interest in property covered by the code would properly be made at the office of the recorder in the recording district of the debtor's residence, or in the case of fixtures, in the office where a mortgage on the real estate concerned would be filed or recorded. AS 45.09.401 (former AS 45.05.768).

There are certain exceptions to the filing provisions of the UCC. AS 45.09.302 (former AS 45.05.734) provides in part:

(c) The filing provisions of AS 45.09.-101–45.09.507 do not apply to a security interest in property subject to a statute

. . . .

(2) of this state which provides for central filing of, or which requires indication on a certificate of title of, the security interests in the property, unless the property is inventory held for sale by a dealer, which has not been previously sold at retail and for which no certificate of title has been issued.

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11 of the Constitution of Alaska, and Alaska R.Admin.P. 23(a).

1. Newell, throughout his brief, refers to the mobile home as a trailer or house trailer.

2. Although the validity of Newell's security interest, a promissory note, was challenged by NBA in the superior court, this issue is not raised on appeal.

3. At the time of the transactions in question, UCC—Secured Transactions was set out in AS 45.05.690—.794. The article has since been renumbered and is now AS 45.09.101–.507.

(d) A security interest in property covered by a statute described in (c) of this section can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate of a certificate of title by a public official.

The Alaska Motor Vehicle Act which was in effect prior to October 1978 former AS 28.10.010–.660, provided a comprehensive scheme for registration, certification of title and perfection of security interests in vehicles subject to the act.[4] The act provided that the owner of a vehicle subject to registration must apply for a certificate of registration and title to the vehicle. Former AS 28.10.040, .050, .060, .270.

Liens or encumbrances on a vehicle which was registered or subject to registration were not valid against a subsequent encumbrancer without notice unless the filing requirements of the chapter were complied with. Former AS 28.10.470. The filing provisions required that instruments creating or evidencing liens or encumbrances be filed with the Department of Public Safety. Former AS 28.10.480. A certificate of title was issued containing a statement of liens and encumbrances certified to the department as existing against the vehicle. Former AS 28.10.510. Filing was the exclusive method of giving constructive notice of liens or encumbrances on registered vehicles. Such liens or encumbrances were exempt from other provisions of law such as the UCC requiring or relating to the recording or filing of instruments creating or evidencing liens or encumbrances upon a registered vehicle. Former AS 28.10.530.

If the mobile home or house trailer was a vehicle subject to registration under the Alaska Motor Vehicle Act, filing with the department and notation of the security interest on the certificate of title was clearly the exclusive method of perfecting a security interest in the mobile home. Applicability of the registration requirements of the Alaska Motor Vehicle Act in this case turns on whether the mobile home or trailer was properly subject to registration when Newell purchased it. Once the vehicle was properly registered, and a certificate of title issued, the act provided the method for transfer of title.[5]

4. AS 28.10.010–.660 (short title: Alaska Motor Vehicle Act) was repealed and a new AS 28.10 was enacted by ch. 178, § 7, SLA 1978, which became effective in October 1978. In 1976, Newell purchased the mobile home, and a certificate of title was issued for it pursuant to the Alaska Motor Vehicle Act. The later sale of the mobile home to the Charltons, and the negotiation and filing of the two security agreements, took place between May and August 1978. Because these transactions took place before the effective date of the new legislation, the repealed provisions of AS 28.10 are applicable to this case. See AS 01.10.100(a).

5. See former AS 28.10.350(a), .360 and .370. AS 28.10.350(a) required the owner of a registered vehicle to endorse an assignment of warranty of title on the certificate of title for the vehicle, including a statement of all liens and encumbrances, and deliver the certificate of title and registration to the transferee. The transferee then presented the endorsed certificate of title, the certificate of registration, and an application for registration and title to the department. The department then reregistered the vehicle and issued the transferee a new certificate of title. AS 28.10.360–.370. Transfer of title to a registered vehicle was generally not deemed complete absent compliance with these statutes. *Harbor Ins. Co. v. U.S. Fidelity*

*& Guar. Co.*, 350 F.Supp. 723 (D.Alaska 1972); *Christian v. State*, 513 P.2d 664 (Alaska 1973).

Newell and Charlton complied with these provisions when Newell sold the mobile home to Charlton; a new certificate of title was issued in Charlton's name.

When Newell purchased the mobile home in 1976, he filed with the Motor Vehicle Division of the Department of Public Safety an "Application for Certificate of Title and Motor Vehicle Registration". The record shows that he was issued a "Certificate of Title to a Motor Vehicle" covering the mobile home, but no registration certificate appears in the record on appeal. Similarly, when the Charltons purchased the mobile home in April 1978, they executed an "Application for Title and Registration", showing NBA as the lienholder. A new certificate of title was issued in the names of the Charltons, but again the record does not show that a registration certificate was issued.

The absence of registration certificates in the record does not necessarily mean that they were not issued. But even if this were the case, it is of no consequence. The important point is that the records of the Division of Motor Vehicles showed NBA as having a security interest in the mobile home. As we have mentioned, the filing of notice of the existence

Newell maintains that the trial court was incorrect in granting the bank's cross-motion for summary judgment because the mobile home was exempt from registration requirements under the statutes in effect prior to October 1978.[6]

Former AS 28.10.040, which was in effect at the time the various transactions in this case took place, described the vehicles subject to and exempt from registration under the Alaska Motor Vehicle Act. That section provided:

Every motor vehicle, trailer, and semi-trailer when driven or moved or parked upon a highway or in a public parking place is subject to the registration provisions of this chapter except

(1) a motor vehicle, trailer, or semi-trailer which is driven or moved upon a highway only to cross the highway from one property to another;

(2) an implement of husbandry which is only incidentally operated or moved upon a highway;

(3) special mobile equipment;

(4) a vehicle for which permanent identification plates and an identification certificate have been issued under § 125 of this chapter, when the vehicle is being driven or moved upon a highway for the primary purpose of historical exhibition or for a similar purpose;

(5) a motor vehicle used in relation to fishing, mining, hunting or farming operations and which is used only occasionally upon a highway, and for which a license has been issued under § 127 of this chapter;

(6) snow vehicles, automobiles and motorcycles which are permitted to race under AS 05.35.

As applied to this case, the section required registration of a trailer[7] if it were to be moved upon a highway, unless movement of the trailer was within one of the exemptions set out in the section. Newell acknowledges that the mobile home was moved once, from the lot where it was purchased to the trailer space where he and his wife occupied it. The act did not provide for a temporary license or temporary registration for transfer of a mobile home or trailer. Therefore, unless the movement of the mobile home or house trailer came within an exemption, it was a vehicle subject to registration when purchased by Newell.[8]

Subsection (1) of AS 28.10.040 exempted from registration requirements "a ... trailer ... driven or moved upon a highway only to cross the highway from one property to another." Newell contends that this subsection exempted a house trailer or mobile home without an engine which was moved upon a highway solely for delivery to a space in a trailer park. He apparently

of such security interest was the exclusive method of giving constructive notice of the existence of such an encumbrance on the mobile home. Former AS 28.10.530.

6. Newell mentions in his brief that he relied completely on the UCC in making his argument for summary judgment below. The sections of the UCC he refers to deal with Commercial Paper (AS 45.03.101–.805, former AS 45.05.-246–.402), and seller's rights upon buyer's failure to pay the price of goods as it becomes due. (AS 45.02.709, former AS 45.05.210).

These sections may have been applicable to a dispute between Newell and Charlton, but they do not apply to the dispute between Newell and NBA. Here, the validity of Newell's security interest is presumed. It is the method of perfecting interests, and the priority of competing interests, which are at issue.

7. Former AS 28.10.650(16) defined "trailer" as

a vehicle without motive power designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that no part of its weight rests upon the towing vehicle.

Appellant does not argue that the mobile home involved in this case was not a trailer as defined by this section. For the purposes of this case we therefore assume that to be true.

8. The only alternatives to registration were identification plates and certificates for historic vehicles (former AS 28.10.125), and licenses for owners of vehicles used in relation to fishing, mining, hunting or farming operations which were used only occasionally upon the highway (former AS 28.10.127). Historic vehicles and the vehicles named in AS 28.10.127 were exempt from registration under AS 28.10.040(4) and (5). There were no provisions in the act for the transportation of vehicles under a dealer's plate.

construes "cross the highway" to cover movement along the highway as long as it is only to move a vehicle such as a trailer from one property to another.

As to the proper interpretation of AS 28.10.040(1), NBA maintains that the ordinary meaning of the word "cross" should be applied,[9] and that the section should be interpreted to cover only those vehicles which cross from one side of the road to the other. In support of this construction, NBA cites a California case which read a similar statute to mean "crossing the highway from one property to another on the opposite side of the roadway." *Connolly v. State*, 72 Cal.App.2d 145, 164 P.2d 60, 63 (1945).

We believe this is a reasonable construction of the statute. The case and the annotation [10] which Newell cites in support of his interpretation of the subsection do not suggest a different result. Both deal with exceptions for farm vehicles which are moved temporarily along highways in the course of farming operations. There is no discussion in either the case or the annotation of an exemption similar to the one in subsection (1). Nor is there a need to make comparison of or distinction between crossing and moving along the highway.

The trial court concluded that former AS 28.10.040(1) did not exempt the mobile home from registration. The court's order to this effect stated in part:

The issue presented for consideration is thus a purely legal one. Does the phrase

"cross the highway from one property to another" apply to a mobile home purchased for use as a residence with the intent to maintain it in a mobile home park where the mobile home is transported on the highway from its place of acquisition to one mobile home park and thereafter to another? Defendant Bank suggests that the exemption is limited to movement of a trailer from one piece of property across the road to another and does not exempt vehicles that on rare occasions are moved along the highway from one locale to another.

The court concluded that NBA's interpretation of the exemption was correct, and awarded summary judgment in its favor.

Newell has interpreted the quoted language to mean that the trial court based its decision on the assumption that the mobile home had been moved twice.[11] He concedes that the mobile home was moved once, from the dealer's lot to the mobile home park, but denies that it was moved again. He contends that the court improperly granted summary judgment to the bank because of this dispute as to the number of times the mobile home was moved.

The trial court's decision was not based on the number of times the mobile home was moved. It was based on the conclusion that the exemption for vehicles which "cross the highway" applied only to vehicles which crossed from one side of the road to the other. Therefore, there was no genuine

9. *See State, Dept. of Revenue v. Debenham Elec. Supply Co.*, 612 P.2d 1001, 1002 (Alaska 1980) (citation omitted): "Unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage." The definition of "cross" when used as a verb is "to intersect ... to extend from one edge or corner to the other: traverse ... to go from one side to the opposing side (cross a street) ... to transfer (as from one side to another) ...." Webster's Third New Int'l Dictionary 540–41 (1963). Issues of the definition of the word "cross" have been annotated at 10A West, Words and Phrases 228–30 (1968): "Cross means to pass or extend from one side to the other of, as to cross a stream. *People v. Hawkins*, 51 Cal.App.Supp.2d 779, 124 P.2d 691, 692 [(1942)]. To cross means to

pass from side to side of .... *Atchison, T. & S.F. Ry. Co. v. Kansas City, M. & O. Ry. Co.*, 67 Kan. 569, 70 P. 939, 940 [(1902)]."

10. *Allred v. J. C. Engleman, Inc.*, 123 Tex. 205, 61 S.W.2d 75 (1933); Annot., 91 A.L.R. 422 (1934).

11. The trial court apparently concluded that the mobile home had been moved twice because the certificate of title issued to Newell listed his address as 4110 DeBarr Road, and the location of the mobile home at the time of sale to Charlton was shown as 7800 DeBarr Road. Newell claimed that the mobile home had been moved from the dealer's to 7800 DeBarr Road, and that 4110 DeBarr Road was only his mailing address.

issue of fact concerning the number of times the mobile home was moved.

The trial court reasonably concluded that the mobile home was a vehicle subject to registration under the Alaska Motor Vehicle Act. Therefore, the filing and notation on certificate of title provisions of the act were the exclusive method of perfecting a security interest in the mobile home. NBA followed these procedures. Newell did not. The trial court was correct in granting summary judgment in favor of NBA.

The judgment is AFFIRMED.

COMPTON, J., not participating.

BURKE, Justice, concurring.

I concur in the result.