In re Hal William SWEARINGEN, Annabelle Swearingen, a/k/a Ann Swearingen, d/b/a Ann's Place, Debtors.

AMERICAN STATE BANK, Plaintiff,

v.

Hal William SWEARINGEN, Annabelle Swearingen, a/k/a Ann Swearingen, d/b/a Ann's Place, and Chris Henry, Trustee, Defendants.

Bankruptcy No. 82–20235.
Adv. No. 82–0146.

United States Bankruptcy Court,
D. Kansas.

Feb. 4, 1983.

Certificate of Review Feb. 9, 1983.

Annabelle Swearingen and Hal William Swearingen, pro se.

Mary L. Stuckey, Olathe, Kan., for defendants/debtors.

Betsy B. Patrick, Osawatomie, Kan., for plaintiff.

Chris W. Henry, Kansas City, Kan., Trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for final hearing on August 19, 1982, upon plaintiff's Complaint for Relief from Stay. Plaintiff, American State Bank, appeared by its attorney, Betsy B. Patrick. Debtors-defendants, Hal and Annabelle Swearingen, appeared in person and by their attorney, Mary L. Stuckey, of Speer, Austin, Holliday, Lane & Ruddick. The trustee did not appear. The Court granted judgment to the Bank with respect to two Chevrolets and inventory; but directed that the stay remain in effect until the Court determined the validity of the Bank's alleged lien on the debtors' mobile home, also described as 1972 Hillcrest Trailer, Serial No. HK 3569F.

Thereafter, on September 9, 1982, the debtors filed a Motion for summary judg-ment and Memorandum in support thereof. The Bank filed a Reply and Memorandum in opposition. The debtors filed a response to the Bank's reply. The Bank then filed an Affidavit purporting to raise a material issue of fact.

The Motion for Summary Judgment again came on for hearing on October 7, 1982, at which time the Court took it under advisement.

## FINDINGS OF FACT

Based on the pleadings, memoranda, affidavit and the file herein, the Court finds that the following facts are undisputed:

1. That the Court has jurisdiction over the parties and the subject matter; and that venue is proper.[1]

2. That the Bank loaned the debtors $15,670.80 on January 8, 1982. On that same date both debtors executed a note, security agreement and financing statement. The security agreement listed as collateral a 1972 Chevrolet pickup, and 1976 Chevrolet automobile and all inventory at Ann's Place. The financing statement listed only the inventory. However, the Bank's lien was duly noted on the titles of both Chevrolets.

3. That neither the note, security agreement or financing statement mentioned a 1972 Hillcrest trailer mobile home that was the debtors' residence. The only written document concerning the mobile home was an application of certificate of title. The application was signed by Ann Swearingen only, although the debtors were married at that time.

4. That the application for certificate of title on the mobile home was received by the Kansas Department of Revenue on March 24, 1982, after the March 18, 1982

---

1. *Jurisdiction is based on the Emergency Resolution promulgated by the Judicial Conference which refers to Bankruptcy Judges all cases arising under Title 11 and all civil proceedings arising under Title 11 or related thereto. The Judicial Conference indicated, in an order dated December 23, 1982, that counterclaims by the estate against persons filing claims against the* estate and litigation regarding the automatic stay arise under Title 11 or are related thereto and are thus referred to the Bankruptcy Courts. As the Bank has filed a proof of claim against the estate and as debtors' motion is essentially a counterclaim in the § 362 adversary, regarding the validity of the Bank's lien, the Court finds that it has jurisdiction.

filing of the debtors' Chapter 7 petition; and the certificate of title was issued on April 9, 1982.

5. That the loan proceeds were not used to purchase the mobile home.

6. That both debtors signed and submitted to the Bank a financial statement dated January 7, 1982, which included the mobile home as an asset with a value of $8,000.00.

That the only disputed matter is whether the debtors intended to create a security interest in the mobile home.

## CONCLUSIONS OF LAW

### I.

Bankruptcy Rule 756 follows Rule 56 of the Federal Rules of Civil Procedure which states in pertinent part:

"Rule 56. Summary Judgment.

*(c) Motion and Proceedings Thereon. ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law...."*

■ An adversary proceeding is ripe for summary judgment when there is no genuine issue as to a material fact. Thus, where factual issues are spurious or irrelevant the motion for summary judgment should be resolved. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Bolack v. Underwood,* 340 F.2d 816 (10th Cir.1965).

The sole factual issue raised herein is whether the debtors intended to grant the Bank a security interest in the mobile home. This issue is material only if the parties' intent is relevant in determining the existence of a valid enforceable security interest. The Uniform Commercial Code provides that certain requisites must be met for an enforceable security agreement: it must be in writing; signed by the debtor(s); it must describe the collateral (or reasonably identi-

fy it, K.S.A. 84–9–110); value must be given; and the debtor must have rights in the collateral. K.S.A. 84–9–203. The official comment to § 9–203 states that in light of these minimal requisites, courts should not let creditors establish secured status by parol evidence.

"¶ 5. ... *The theory of equitable mortgage, insofar as it has operated to allow creditors to enforce informal security agreements against debtors, may well have developed as a necessary escape from the elaborate requirements of execution, acknowledgement and the like which the nineteenth century chattel mortgage acts vainly relied on as a deterrent to fraud. Since this Article reduces formal requisites to a minimum, the doctrine is no longer necessary or useful. More harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of obtaining a signed writing."*

■ A number of courts have followed the drafter's suggestion and applied the parol evidence rule in the construction of security agreements. The parol evidence rule, simply stated, is absent fraud, mistake, or accident, parol evidence is inadmissible to vary, add to, or contradict the terms of a valid written instrument that is on its face, complete and unambiguous. 69 AmJur 2d Secured Transactions § 275.

In *In re Mitchell,* 458 F.2d 700 (10th Cir.1972), the Court held that the bankruptcy referee erred when he admitted parol evidence of the bank's intent to take a security interest in inventory, accounts receivable and contract rights. There, one section of the security agreement listed the collateral and another section classified the collateral generically. The parties failed to list inventory, accounts receivable and contract rights as collateral in the first section of the security agreement; but they did check boxes corresponding to such classifications in the second section of the security agreement. The court found that the first section was an exclusive list of collateral, complete and unambiguous on its face. The

court refused to consider parol evidence that the parties inadvertently failed to list all intended collateral therein. The court went on to state that if there was ambiguity, it should be construed against the bank as drafter of the security agreement. The bank drafted the security agreement to facilitate compliance with the UCC and the bank had every opportunity to fill out the form completely.

In *In re Shelton,* 472 F.2d 1118 (8th Cir. 1973), the court found that in spite of the parties' clear intent to create a security interest, failure to comply with the § 9–203 requisites of an enforceable security agreement rendered the security interest void. In other words, the parties' intent was irrelevant, given the noncompliance with § 9–203.

In *Matter of California Pump & Mfg. Co., Inc.,* 588 F.2d 717 (9th Cir.1978), the security agreement described the collateral as property located in one city while it was actually located elsewhere. The court found that § 9–203 was not complied with in that the security agreement failed to reasonably identify the collateral. Moreover, because the security agreement was unambiguous on its face the court refused to admit parol evidence of the parties' intent. Referring to § 9–203 and the drafters comment thereto, the court stated " . . . *When parties freely sign an agreement covering certain property, this court will not alter the clear language the parties employ.*"

Here the Bank wants the Court to entertain parol evidence that the parties intended to include the mobile home as collateral but inadvertently omitted it from the security agreement. The Court finds that on its face the security agreement is both complete and unambiguous. There is no question that a perfected security interest existed in the 1972 Chevrolet pickup, the 1976 Chevrolet automobile and all inventory at Ann's Place, the debtors' business. Given the mandate of K.S.A. 84–9–203 and 84–9–110, that the security agreement reasonably identify or describe all of the collateral, this Court will not admit parol evidence to add the mobile home to the security agreement. Here the Bank provided the form security agreement and should have been thorough in filling it out. The parties' intent is thus an immaterial issue of fact. Therefore, the Court proceeds to determine the debtors' Motion for summary judgment as to the mobile home.

## II.

The debtors contend that the Bank's purported security interest in the mobile home is void and unenforceable and that the Bank's reclamation complaint should therefore be denied as to the mobile home. They further contend that there is no enforceable security agreement granting a security interest in the mobile home since the security agreement fails to describe or identify the mobile home. The Bank contends that although the mobile home is omitted from the document entitled "security agreement", the security agreement is actually comprised of said document and the application for certificate of title, which when read together, fully comply with the K.S.A. 84–9–203 requisites for an enforceable security agreement.

The Bank cites several cases for the proposition that a series of documents that establish a security transaction may collectively qualify as a security agreement. See *In re Numeric,* 485 F.2d 1328 (1st Cir.1973); *In re Modern Engineering & Tool Co., Inc.,* 4 B.C.D. 713, 17 C.B.C. 642 (D.Conn.1978).

However, this Court chooses to rely on a decision of the Tenth Circuit with a substantially similar fact pattern. In *Pontchartrain State Bank v. Poulson,* 684 F.2d 704 (10th Cir.1982), the debtors executed a $100,000.00 note and a financing statement listing various equipment in consideration of a loan from a bank. There was no security agreement per se; rather, the debtor's counsel sent a letter to the bank ostensibly vesting it with a security interest in the equipment identified in the financing statement. The letter was signed by the debtor's counsel in his personal capacity, not as the debtor's agent. The court found that neither the financing statement nor the let-

ter satisfied the requirements of K.S.A. 84–9–203. Although the letter was in writing, had language granting a security interest, and reasonably identified the collateral, it was not signed by the debtor. Furthermore, although the financing statement reasonably identified the collateral, was in writing and was signed by the debtor, it did not have language granting a security interest. Thus, both documents were defective. The court noted that some courts had allowed several documents to be considered together so that each document could cure the other's defects, citing *In re Numeric*, 485 F.2d 1328 (1st Cir.1973); and *In re Amex-Protein Development Corp.*, 504 F.2d 1056 (9th Cir.1974). However, the court distinguished those decisions on the basis that those documents could be considered together by means of the doctrine of incorporation by reference since in those cases the documents referred to each other. In *Pontchartrain, supra.*, however, neither the letter nor the financing statement referred to each other, thus the court found that the documents could not be read together.

■ The facts herein are significantly analogous. Here there is a security agreement that is in writing, signed by the debtor and that contains language granting a security interest. However, it does not describe or reasonably identify the mobile home. The application for certificate of title, which is in essence a financing statement for vehicles, is in writing, reasonably identifies the mobile home and is signed by *one* debtor. However, it does not contain granting language. Thus, neither document qualifies as an enforceable security agreement under K.S.A. 84–9–203. Furthermore, neither the security agreement nor the application for certificate of title incorporate each other by reference. Accordingly, the Court finds that the documents, singularly or collectively, do not meet the requirements for an enforceable security agreement under K.S.A. 84–9–203.

### III.

The debtors also contend that the purported security interest is void because whether the mobile home is realty or personalty, Hal Swearingen's failure to execute the application for certificate of title was fatal since he was a co-debtor, joint tenant and husband of Ann Swearingen. The Bank contends that since both Hal and Ann signed the note, financial statement and security agreement, they both consented to the Bank's lien on the trailer.

Kan. Constitution Art. 15, § 9 invalidates liens on homesteads unless the lien is a purchase money mortgage, or for home improvements or taxes, or unless given by consent of both husband and wife. K.S.A. 60–2301 repeats these provisions. Likewise, K.S.A. 58–312 invalidates nonpurchase money liens on personalty unless obtained with the joint consent of husband and wife.

■ Although both debtors signed the note and security agreement, that document did not encumber the mobile home, since it was not listed as collateral. Moreover, the fact that the debtors signed a financial statement is irrelevant. That document did not encumber the mobile home, it merely provided the Bank with a list of assets and liabilities to assist the Bank in deciding whether to grant the loan. There is absolutely no evidence that Hal Swearingen consented to Ann's execution of the application for certificate of title or to Ann's attempted encumbrance of the mobile home. Accordingly, even if there was a valid security agreement, the lien on the mobile home would be void under Kansas law.

### IV.

In an effort to cover all bases, the debtors contend that even if the lien was validly obtained, it would be avoidable because the application for title and the issuance of title occurred *after* the filing of the petition and the inception of the automatic stay that prohibits post petition acts "... *to create, perfect, or enforce any lien against property of the estate.*" 11 U.S.C. § 362(a)(4).

■ The Court finds that the application for certificate of title was received by the Kansas Department of Revenue on March

24, 1982 and title was issued on April 9, 1982. These events occurred after the March 18, 1982 filing of the petition. Not only were these acts proscribed by § 362(a)(4), but § 549(a)(2)(B) provides that the trustee may avoid post petition transfers of property, such as attempted lien perfections.

The Court therefore finds that the Bank never obtained a valid enforceable security agreement as to the mobile home and that even if it did the lien would be void under Kansas law and avoidable under bankruptcy law.

Accordingly, plaintiff's complaint for reclamation of the mobile home should be denied.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### CERTIFICATE OF REVIEW

The attached order has been certified by Bankruptcy Judge Benjamin E. Franklin under Rule 42(e)(2)(A) of the Local Rules of Court for this District. Upon review of the same in accordance with Rule 42(e)(2)(B) of said Local Rules, the undersigned hereby approves and adopts said order in its entirety including the findings of fact and conclusions of law therein contained.