## In re TRI–STATE FABRICATORS, INC., Debtor.

### Bankruptcy No. 81–01252.

United States Bankruptcy Court, W.D. Oklahoma.

Aug. 10, 1983.

W. Rogers Abbott, II, Oklahoma City, Okl., for trustee, W. Rogers Abbott, II.

Stephen W. Elliott of Kline & Kline, Oklahoma City, Okl., for Dewal Leasing.

## MEMORANDUM OF DECISION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

This matter was heard on Motion of Dewal Leasing, the lessor, for an order of abandonment of certain funds held by the trustee. The funds sought to be abandoned are proceeds from an auction sale of buildings and related fabrication apparatus which were situated on leased property owned by Dewal and leased to the debtor. Dewal contends that the property at issue was not owned by the debtor and therefore was not property of the estate since the property was on the land when the lease was made. Should Dewal not prevail on this contention the second question presented is whether the subject items sold by the trustee were "trade fixtures" and therefore personalty of the debtor or whether they were fixtures annexed to the realty and therefore property belonging to the lessor.

The evidence shows the debtor was in the business of manufacturing, selling and servicing oilfield equipment. Originally filed as a Chapter 11 proceeding, the case was converted to Chapter 7 and a trustee was appointed.

Dewal bought real property from various sellers, including the debtor, in April of 1981. Prior to this purchase the debtor had leased property in the same general area from these persons for purpose of operating its business. During the lease period the debtor had placed upon the leased and owned property certain structures used in the business. Part of the real property was once owned by the debtor, subsequently sold to Dewal and then leased back to the debtor. The agreement for this transaction is a part of the record.

At the time the lease agreement was entered into virtually all of the property which is the subject of the dispute was on the leased premises. The property was either resting on the real estate, tack welded to beams which were set into the ground and secured by concrete or tack welded to the interior portion of a building. The latter item was the only property not on the premises when the lease agreement was entered into.

The trustee sold various items which were removed from the leased premises. The items sold and at issue were represented by Lot numbers 191, 573, 606, 577, 589, 591 and 609. The proceeds of the sale total $22,900 and this amount is being held by the trustee.

■ Dewal Leasing first asserts that it is the rightful owner of the property which was sold as it was considered included in the purchase of the land. However, the applicant's proof in this regard fails to convince the Court that this was the case. There was no evidence offered at trial to support Dewal's position other than the testimony of Howard Wisdom, a partner of Dewal Leasing, that it was his understanding that the lease was to include all buildings and other physical property. Yet, the lease provides:

"1. *Subject and Purpose.* Lessor leases the *building* and land described in Exhibit 'A' attached hereto and made a part hereof, to Lessee for Lessee's use as a facility for manufacturing, selling and servicing oilfield equipment." (emphasis added)

Thus, the lease provides for the lease of a single building and the reference to "Exhibit A" is not helpful since this exhibit was not attached to the lease. Moreover, other references contained in the file clearly indicate that only a single building was contemplated along with the land sale. See e.g., Proof of Claim filed January 26, 1983, and Financing Statement.

The proof of ownership offered by Dewal is insufficient and the various items in the record militate against any inference that the subject property was considered owned by the lessor at the beginning of the lease period. Consequently, we hold that the debtor was the rightful owner of the prop-

erty in question when the lease was entered into.

Next, Dewal claims ownership of the property in question due to a provision of the lease agreement with the debtor. The relevant portion provides:

"(c) All alterations, additions and improvements on or in the demised premises at the commencement of the term, and that may be erected or installed during the term, shall become part of the demised premises and the sole property of the lessor, except that all moveable trade fixtures installed by Lessee shall be and remain the property of Lessee."

It is undisputed that Dewal has not made any alterations, additions or improvements on or in the premises and that such alterations, additions or improvements were made by the lessee prior to or subsequent to the lease agreement. Furthermore, it appears that the terms "all moveable trade fixtures installed by lessee" means trade fixtures whenever installed, either prior to or subsequent to the lease. Consequently, the issue becomes whether the items in question may be regarded as trade fixtures, and thereby excepted as items referred to as "alterations, additions and improvements" by the language of the lease.

■ In Oklahoma a tenant may remove from the leased premises any items affixed thereto for the purpose of trade or manufacture if such items can be removed without causing injury to the premises and when the item has not become an integral part of the premises. See 60 O.S.1981 § 334 [1]; see also, Gutierrez v. Davis, 618 F.2d 700 (10th Cir.1980). Oklahoma law defines a "fixture" to be "[a] thing ... affixed to land ... or imbedded in it ... or permanently resting upon it, as in the case of buildings, or *permanently* attached to what is thus permanent, as by means of

cement, plaster, nails, bolts, or screws." 60 O.S.1981 § 7. (emphasis added).

Case law has interpreted § 7 by a test which looks to whether the item has been actually annexed to realty or something appurtenant thereto, whether it is applicable to the purpose to which part of the realty with which it is connected is appropriated, and whether there was an intention to make permanent annexation to the realty. *Potts v. Biggs & Co.,* 176 Okl. 96, 54 P.2d 341 (1936).

■ Generally speaking, in disputes between landlord and tenant, there exists a presumption that the tenant, by annexing fixtures, did so for his own benefit and not to enrich the freehold. *See generally* 35 AM.JUR.2d *Fixtures* § 35 (1967). This rule was prompted by public policy considerations which are long established. *Grote v. Brown,* 170 F.2d 747 (10th Cir.1948). Moreover, a presumption of lack of intent to permanently annex an article to realty is created when removal of an item can be done without material injury to the realty. *See In re Marla Jean, Inc.,* 25 B.R. 282 (Bkrtcy.W.D.Mo.1982); *Hedges v. First National Bank,* 170 Okl. 175, 39 P.2d 57 (1934). Furthermore, it is apparent that a lessor in leasing premises for business purposes contemplates the installation of ordinary fixtures commonly used in the particular business. Consequently the lessor must be deemed to have consented to a slight defacing of certain property that would necessarily follow the installation and removal thereof. *See Gibson v. Exchange National Bank of Pauls Valley,* 172 Okl. 106, 42 P.2d 511 (1935).

With this background we proceed to examine the various items now in dispute. Essentially the property in question consists of several small steel buildings or frame-

**1.** This statute reads as follows:
Fixtures may not be removed—Exceptions
"When a person affixes his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land, unless he chooses to require or permit the former to remove it: Provided, that a tenant may remove from the de-

mised premises at any time during the continuance of his term anything affixed thereto for purpose of trade, manufacture, ornament or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises."

works used by the debtor to facilitate manufacturing and servicing oilfield equipment.

Item 191 consisted of a steel frame which was tack welded to the interior of a structure owned by Dewal. The testimony indicated that the weld was not a permanent one, but was only intermittently welded. In addition, an employee who worked in the service yard and who helped dismantle the structure testified it took only fifteen minutes to remove the welds and detach it from the building.

Items 573 and 606 were steel frameworks used as cranes and were constructed so as to provide protection for workers as they serviced the oilfield equipment. Item 606 was not attached to the realty or to leveling beams, but item 573 was tack welded at various intervals to leveling beams which in turn were permanently welded to steel supports. These supports were buried in the ground and secured with concrete.

Item 577 was a steel building which was used for storage. It was neither welded nor permanently secured. Testimony reveals that this item rested on the ground supported by 2 × 4's at its base.

Items 589 and 591 were skid mounted storage buildings which rested upon the ground. The testimony indicated that these buildings were capable of being moved easily from place to place.

Finally, item 609 is described as a "Madden Portable Building" which as the name indicates was a portable building. It is uncontested that each of these items were in some fashion used by the debtor in the operation of its business.

If the items above are trade fixtures, then the debtor or trustee may properly remove them from the premises so long as the premises are not destroyed. *In re Producers Energy Corp.*, 11 B.R. 669 (Bkrtcy. W.D.Okl.1981). In *Heiselt Const. Co. v. Morrison-Knudsen Co.*, 176 F.2d 207 (10th Cir.1949), the defendant had entered upon property and constructed a building. The building was erected from prefabricated section and attached to a cement foundation by ⅝ inch bolts imbedded in the foundation. This building was designed such that it could be dismantled and removed and was used as an office building. Of such a structure, Chief Judge Phillips stated that "[w]e are of the opinion that Morrison-Knudsen had the right to remove the building as a trade fixture since it could be done without material injury to the land." *Id.* at 209.

In the case of *Lemmons v. United States*, 496 F.2d 864, 204 Ct.Cl. 404 (1974), the Court of Claims had before it the issue whether a sand and gravel tipple was to be considered part of the realty or personalty when on a leasehold. The facts of the case are strikingly similar to those at bar. The tipple consisted of eight steel hoopers or bins and other equipment necessary for the lessee's business operation. The tipple sat on steel beams legs which were either embedded in concrete footings or bolted to steel plates embedded in concrete footings. The steel beam legs individually supported the various component parts of the tipple which were welded together to form a cohesive watertight structure. The hoppers were from 8 to 12 feet off the ground in order to enable trucks to be driven beneath them to be loaded. The tipple was welded and braced together so as to withstand the elements and remain sturdy, however it had the capability of being moved from one location to another. The plaintiff in that case claimed that because the tipple was annexed to the land it must be considered part of the real property. However, the Court found that "based on principles of public policy and a desire to encourage trade and manufacturing" the tipple would be regarded as personalty and not realty recoverable by the lessor at the end of the lease term. *Id.* at 870, 204 Ct.Cl. 404.

Finally, the Supreme Court in holding a trade fixture annexed to realty by a lessee to be personalty has stated: "... Indeed, it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term ...." *Wig-*

*gins Ferry Co. v. O & M Ry.,* 142 U.S. 396, 12 S.Ct. 188, 35 L.Ed. 1055 (1892).[2]

In determining whether the items in question should be considered realty or personalty this Court should also look to the intentions of the parties. Upon reviewing the record the Court is unable to find any affirmative evidence to support a finding that parties intended the various structures to be part of the realty. Indeed, the lease agreement itself contemplates that "trade fixtures installed by the Lessee shall be and remain the property of the Lessee."

Besides the points noted above, other Courts have said that in addition to attachment, many other factors must be taken into consideration before an item should be found a fixture annexed to realty. *See e.g., In re United Chevrolet, Inc.,* 21 B.R. 934 (Bkrtcy.D.Mass.1982); *In re Marla Jean, Inc., supra; In the Matter of Schwen's,* 19 B.R. 681 (Bkrtcy.D.Minn.1981).

For all the foregoing reasons the Court is of the opinion that the items in question are personalty and were not annexed to the realty so as to become property of the lessor upon termination of the lease period. Therefore, the proceeds derived from the auction sale rightfully belong to the estate.

Accordingly, it is ordered that the Application of Dewal Leasing for an Order of Abandonment will be and hereby, is denied.

Pursuant to B.R. 7052 this Memorandum Decision constitutes the findings of fact and conclusions of law.

An appropriate order will be entered.

---

**2.** Interestingly, the Supreme Court in this case cited another case with approval which found that even stone piers built by a lessee and firmly embedded in earth were personalty and did not become part of the realty. This decision would appear to encompass the facts in the instant case where the structures are supported by steel beams.