**In re Elmer Joe GRAY and Doris A. Gray, Debtors.**

**Bankruptcy No. BK–83–00349–B.**

United States Bankruptcy Court, W.D. Oklahoma.

May 24, 1984.

Bruce McClelland, of McClelland, Collins, Bailey, Bailey & Manchester, Oklahoma City, Okl., for The Plaza Nat. Bank.

H.L. Heiple, Norman, Okl., for Norman Bank of Commerce.

## MEMORANDUM DECISION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

The issue presented in this matter is a narrow one and is most simply stated as follows: in order to perfect a security interest in a mobile home, is the proper method to employ the filing of a lien entry notation on the certificate of title or the filing of a financing statement in the office of the county clerk. The issue is one of first impression in this jurisdiction. The facts which follow provide the necessary background information.

Sometime in 1973 the debtors purchased the mobile home in question. When purchased the unit was a completely equipped mobile home, mounted on wheels. The unit was towed from its place of purchase to a mobile home park. The unit was still there at the time of the filing of this bankruptcy proceeding. The mobile home rests on the original wheels with which it was equipped when purchased. There are concrete blocks underneath the vehicle to keep the wheels from moving and to secure the same. It has been connected to the various requisite utilities, provided for by the mobile home park.

When they purchased the mobile home, the debtors received a certificate of title from the dealer. Debtors immediately purchased a tag for the mobile home, as required by 47 O.S.1981 § 22.5m.[1]

In May of 1982, the debtors approached Plaza National Bank for a loan with a view toward refurbishing the mobile home. At this time the debtors were living in Bartlesville, Oklahoma. The mobile home was, and has been, situated in the mobile home park located in Del City, Oklahoma. The loan was obtained and on May 18, 1982, the debtors signed a security agreement covering the mobile home wherein Plaza National Bank was listed as the secured party. The debtors surrendered the certificate of title to the Plaza National Bank and the same was forwarded with a lien entry form to the Oklahoma Tax Commission. On May 21, 1982, the Oklahoma Tax Commission noted the lien of Plaza National Bank on the face of the title. The title certificate was eventually returned to the debtors. Thenceforth, the title certificate showed on

---

1. This section involves the licensing and registration of manufactured homes, which by statutory definition apply to mobile homes. *See* 47 O.S.1981 § 22.1.

its face that there was a lien covering said mobile home in favor of the Plaza National Bank.[2]

In November of 1982, the debtors approached Norman Bank of Commerce and negotiated a loan upon personal property, including amongst others, this same mobile home. Norman Bank was shown the certificate of title by the debtors, which reflected on its face the security interest of Plaza National. Norman Bank then forwarded the certificate of title and a lien entry form to the Oklahoma Tax Commission, which, on November 29, 1982, noted the lien of Norman Bank of Commerce on the certificate of title. Norman Bank took the additional step of filing a financing statement covering the mobile home with the county clerk of Oklahoma County in November of 1982.

It is the contention of Norman Bank that the perfection of the security interest is properly accomplished by way of filing a financing statement pursuant to 12A O.S. 1981 § 9–302. This statute is Oklahoma's version of the Uniform Commercial Code (hereinafter "U.C.C."), providing for the requirement of filing a financing statement in order to perfect a security interest, with certain exceptions. Nonetheless,

> [t]he filing of a financing statement otherwise required by this article is not necessary *or effective* to perfect a security interest in property subject to:
>
> . . . .
>
> a certificate of title statute of another jurisdiction under the law of which delivery for or indication of a security interest on the certificate is required as a condition of perfection. (emphasis supplied).

12A O.S.1981 § 9–302(3)(c). Oklahoma has adopted the requirements of certificate of title pursuant to the Motor Vehicle License and Registration Act (hereinafter "the Act"). 47 O.S.1981 § 22 *et seq.* Section 23.2b of the Act provides in pertinent part that

> [e]xcept for a security interest in vehicles held by a dealer for sale or lease ..., a security interest, ... in a vehicle as to which a certificate of title may be properly issued by the Tax Commission *shall be perfected only* when lien entry form, ... and the existing certificate of title ... are delivered to the Oklahoma Tax Commission or one of its motor license agents. (emphasis supplied).

The issue then crystalizes into whether a mobile home is a "vehicle" under § 23.1 of the Act. That section defines "vehicle" as "[e]very device, in, upon, or by which any person or property is or may be transported or drawn, except devices moved by human or animal power, when not used upon stationary rails or tracts." While at one time it may have been true that the key to the analysis was that a motor vehicle license and registration act was geared toward public safety, public liability and revenue, with Article 9 of the U.C.C. concerned with credit transactions and the interests of the parties and others affected by such transactions, such is now no longer the case given § 23.2b of the Act. If a certificate of title is required, perfection of a security interest in the item covered by the certificate of title *must* appear by way of a lien entry on the face of the certificate. The problem herein is attributable to the Jekyll-Hyde nature of a mobile home: whether a mobile home is more mobile than it is a home or more of a home than it is mobile. It is designed as a house; yet, unlike a house, it is also capable of being relatively easily transported.

The recent case of *In re Sewell*, 32 B.R. 116 (Bkrtcy.N.D.Ala.1983), *reprinted in* 37 U.C.C.Rep.Serv. (Callaghan) 303, dealt with the issue of whether a financing statement must be filed in order to perfect a purchase money security interest in a mobile home. While holding that a mobile home is a "motor vehicle" required to be licensed and that a financing statement must be filed in order to perfect a purchase money security

---

**2.** Clearly, this was not a purchase money security interest. If such were the case, we believe our opinion would be that much more apposite.

interest in the mobile home, the Court acknowledged that mobile homes by statute were exempt from the requirements of the title certificate provisions of the Alabama statutes, Ala.Code § 32–8–31(9) (1975), which statutes provide for perfection of security interests in affected motor vehicles by application for a lien notation on the certificate of title for the vehicle. 32 B.R. at 124. For the proposition that a mobile home is a "vehicle", see generally, *In re Radny*, 12 U.C.C.Rep.Serv. (Callaghan) 583 (W.D.Mich.1973); *In re Merrill*, 9 U.C.C. Rep.Serv. (Callaghan) 755 (D.Neb.1971); *Newell v. National Bank of Alaska*, 646 P.2d 224 (Alaska 1982). Query whether the opinion would have been otherwise had mobile homes not been exempt from the requirements of title certificate provisions of the statutes of Alabama.

The Court of Appeals of New York in *Albany Discount Corp. v. Mohawk National Bank*, 28 N.Y.2d 222, 321 N.Y.S.2d 94, 269 N.E.2d 809 (1971) held that a mobile home is a "motor vehicle" for purposes of the U.C.C. provision relating to the necessity of filing a financing statement in order to perfect a security interest in a motor vehicle required to be licensed or registered in the state. This requirement was in the 1958 official text of subsection (1) of 9–302 of the U.C.C., never adopted in the state of Oklahoma. While New York has adopted certificate of title requirements, *Albany* is still valid law for in New York, mobile homes are excluded from the certificate of title requirements, which include lien notations on the title certificate. N.Y.Veh. & Traf.Law § 2102(b) (McKinney 1972). *But see Wilcox Trailer Sales, Inc. v. Miller*, 200 Kan. 315, 436 P.2d 860 (1968) (owner of a mobile home required to obtain a certificate of title to the vehicle; any lien of encumbrances thereon must be indicated on certificate in order to perfect security interest. K.S.A. §§ 8–127; 8–135 (1968)). *Cf. Matter of Kerr*, 598 F.2d 1206 (10th Cir. 1979); *In re Swearingen*, 27 B.R. 379 (Bkrtcy.D.Kan.1983). *Wilcox* involved a purchase money security interest, as did *Kerr*; however, *Swearingen* did not involve such an interest. *See also First Nat.*

*Bank of Denver v. Turley*, 705 F.2d 1024 (8th Cir.1983) (law of South Dakota, S.D. Codified Laws Ann. § 32–3–3.1 (1976), provides that a mobile home shall have a certificate of title upon sale; § 32–3–41 provides that perfection of a security interest may be realized only by the filing of the notation of lien on the certificate of title); *In re Easy Living, Inc.*, 407 F.2d 142 (6th Cir.1969) (Circuit Court affirming District Court order compelling trustee in bankruptcy to cause certificate of title to be issued for mobile home pursuant to laws of Ohio) (mobile home addition unit is a "motor vehicle", as such must be titled pursuant to provision of Ohio Certificate of Motor Vehicle Title Law, Ohio Rev.Code Ann. § 4505.01 (Page 1982) with perfection of a security interest accomplished by notation of lien on title per § 4505.13. Ohio Att'y Gen. No. 79–098 (1979)); *Matter of Dann*, 2 B.R. 107 (Bkrtcy.M.D.Fla.1979) (purchase money security interest in a mobile home perfected by causing the recordation of lien on title certificate issued by Department of Motor Vehicles of Florida).

In a case involving the priority as between a secured claimant and the trustee in bankruptcy, the Seventh Circuit in *Matter of Keidel*, 613 F.2d 172 (7th Cir.1980), in construing the law of Illinois, Ill.Ann.Stat. chap. 95½, § 3–202 (Smith-Hurd 1980), held that a security interest in a mobile home was subordinate to the lien of the trustee in bankruptcy where the holder of the security interest did not perfect it by filing a certificate of title with the name and address of the lienholder noted thereon until after the filing of the petition in bankruptcy. Finally, in *In re Frontier Mobile Home Sales, Inc.*, 635 F.2d 726 (8th Cir. 1980), *aff'd on other grounds*, the Circuit Court stated that under Arkansas law, a notation of a lien on the certificate of title for a mobile home was the correct means of perfecting a security interest in the mobile home. Ark.Stat.Ann. §§ 75–102, 132.1, 160, 161 (1979).

In contraposition to the above line of cases, there exist those which may be entitled "fixture cases". Cases of this ilk have

held that a mobile home does not possess a "mobile" nature and, given certain specific circumstances, becomes affixed to the realty on which it rests. (As one bankruptcy court has recognized, the presence of wheels are a notorious encitement to mobility. *In re Haning*, 35 B.R. 242 (Bkrtcy.N.D.Okla.1983)). The dispute in this regard most frequently occurs when determining whether the mobile home is a chattel that requires perfection by filing pursuant to 9–302 of the U.C.C. or a fixture attached to realty that requires filing in accordance with 9–313 and 9–401 of the U.C.C. In Oklahoma, "[a] thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs, or imbedded in it, as in the case of walls, or *permanently resting* upon it, as in the case of buildings, or *permanently attached* to what is thus permanent, as by means of cement, plaster, nails, bolts or screws." 60 O.S.1981 § 7 (emphasis supplied). It is the contention of Norman Bank of Commerce that Title 47 of the Oklahoma statutes does not govern the perfection of a security interest in a *stationary* mobile home; that in fact, the mobile home in question had become affixed to the land on which it now rests. As a corollary proposition, Norman Bank of Commerce argues that the Oklahoma certificate of title requirements apply solely to *motor* vehicles.

The Seventh Circuit, in *George v. Commercial Credit Corp.*, 440 F.2d 551 (7th Cir.1971), held that the section of the Wisconsin Motor Vehicle Code which provided for perfection of a security interest in a vehicle by lien notation on the certificate of title did not apply to a mobile home which had become a fixture. The Court noted the three tests for determining if facilities are to be considered part of the realty: 1) actual physical annexation to the realty; 2) application or adaptation to the use or purpose to which the realty is devoted; and 3) intention of the person making annexation to make a permanent accession to the freehold. *See also United Benefit Life Ins. Co. v. Norman Lumber Co.*, 484 P.2d 527 (Okl.1971); *Hartford Fire Ins. Co. v. Balch*, 350 P.2d 514 (Okl.1960). In affirming the District Court the Circuit Court noted that the debtor's actual intention pointed definitely toward affixing the mobile home to the land as a permanent residence. Indicia of such intention were the following: application for a building permit (which, by law, required that a concrete slab as a permanent foundation be erected within one year), the purchase of a homeowner's insurance policy, and requests made to the seller to have the wheels of the home removed. Furthermore, the home rested on a five acre plot owned by the debtor. Finally, the debtor had never applied for a certificate of title from the Wisconsin Motor Vehicle Department. In concluding, the Circuit Court stated that "[t]he law of fixtures *may* ... be applied to mobile homes ...." 440 F.2d at 554 (emphasis supplied).

The Court in *Commercial Tp. v. Block 136, Lot 2*, 179 N.J.Super. 307, 431 A.2d 862 (1981), *reprinted in* 34 U.C.C.Rep. Serv. (Callaghan) 760, recognized that prior to 1979, a mobile home was not considered a fixture; thus, in order to perfect an interest in a mobile home, the only recourse of the secured party was to record the interest on the certificate of title issued by the Department of Motor Vehicles. However, the Court noted that since that time mobile homes in New Jersey are to be treated as fixtures with the requirements for perfecting security interests therein pursuant to 9–401 of the U.C.C., which provides that the proper place to file in order to perfect a security interest in goods which at the time the security interest attaches are or are to become fixtures, is in the office where a mortgage on the real estate concerned would be filed or recorded.

In *Hartford National Bank & Trust Co. v. Godin*, 137 Vt. 39, 398 A.2d 286 (1979), *reprinted in* 26 U.C.C.Rep.Serv. (Callaghan) 221, the Supreme Court of Vermont addressed the question of when does a mobile home become a fixture. In finding the requisite intent the Vermont Court noted the mobile home possessed a concrete block foundation, attached steps and en-

casement of the foundation in aluminum foundation siding. As in *George v. Commercial Credit Corp.,* *supra,* and *Commercial Tp. v. Block 36, Lot 2, supra,* the debtor in *Hartford* owned the land on which the mobile home rested.

In *Matter of Fink,* 4 B.R. 741 (Bkrtcy.W.D.N.Y.1980), the Court found that the mobile home became affixed to the realty when the following had occurred: a foundation was excavated, the foundation was poured and the home rested on it. The Court further noted that from pictures in evidence the home looked like any other ranch house. In Oklahoma presumption of lack of intent to permanently annex an article to realty is created when removal of an item can be done without material injury to the realty. *In re Tri-State Fabricators, Inc.,* 32 B.R. 260 (Bkrtcy.W.D.Okl.1983); *Hedges v. First National Bank,* 170 Okl. 175, 39 P.2d 57 (1934).

With this rather extensive background in mind we now proceed to examine the mobile home in dispute.

We have no doubt that a mobile home is subject to Oklahoma's Motor Vehicle License and Registration Act. We first note that a mobile home is listed in the definitional section of the Act. 47 O.S.1981 § 22.1(9). Further, a mobile home is subject to an annual license fee pursuant to § 22.5m of the Act. Finally, contrary to Norman Bank's contention, the certificate of title requirements do not apply solely to *motor* vehicles. Section 22.1 of the Act clearly delineates between vehicles and *motor* vehicles. In fact, Norman Bank noted its lien on the certificate of title of the mobile home in question. It should not now be heard to complain that the title certificate requirements are inapplicable.

■■■■ This does not, however, end our discussion for we still have before us the issue of whether the mobile home in question had become affixed to the land on which it rests. Recognizing the rather nebulous nature of a mobile home and the problems it may present to the courts, especially when it is the subject of commercial credit transactions, we are hard pressed to find that the mobile home at issue had become affixed to the realty. We note initially that, unlike the debtors in the previously cited "fixture cases", the debtors in the instant case do not own the land on which the mobile home rests, rather they are renting space in a mobile home park.[3] Nor was there evident any demonstrable fixation to the realty. There was no additional construction which would hinder future mobility. There was no permanent foundation on which the mobile home rests. In fact, not even the wheels were removed, the frame merely rested on concrete blocks. The fact that the home was connected to utility services, without more, is insufficient for a finding of fixation. Accordingly, the proper means by which to perfect a security interest in the mobile home at issue was by means of lien notation on the certificate of title pursuant to 47 O.S.1981 § 23.2b. Therefore, the lien of Plaza National Bank, having been recorded prior in time to that of Norman Bank of Commerce, has priority.[4]

In conclusion, Plaza National Bank has a properly perfected security interest in the mobile home in question. Norman Bank of Commerce has a properly perfected securi-

---

**3.** Albeit mere rental of the realty on which a mobile home rests does not per se foreclose the mobile home from becoming a fixture.

**4.** We hasten to add that due to the dual nature of the mobile home, our opinion could just have easily been entirely different. That is, at some point, a mobile home may become affixed to the realty with any discussion of mobility rendered absurd. (Questions may be raised as to whether mobile homes constructed and intended at inception to be attached to realty, should not be financed in the same manner as conventional homes.) Accordingly, in order to be properly perfected, lien notation on the certificate of title may prove ineffective. The burden unfortunately shifts to the unwary lender who would be well advised to inspect the future security with an eye toward questions of proper perfection. We merely hold today that, given the facts, the security interest in the mobile home at issue was properly perfected pursuant to title certificate requirements.

ty interest also; however, the security interest is junior to that of Plaza National.

Pursuant to B.R. 7052, this memorandum constitutes our findings of fact and conclusions of law. Judgment to be entered accordingly.